IN THE UNITED STATES DISTRICT COURT

FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | MOTION FOR MODIFICATION OF |
| PLAINTIFF, | : | TERM OF IMPRISONMENT UNDER |
| | : | TITLE 18 U.S.C. § 3582 (c)(2) |
| VS. | : | DOCKET No. 3:CV-07-0510 |
| JUAN A. SANCHEZ | : | PRIOR DOCKET No. 1:CR-01-090 |
| DEFENDANT, | : | |

**UNITED STATES DISTRICT JUDGE**

**HONORABLE / S / JUDGE WILLIAN W. CALDWELL**

**Comes** Now, defendant/petition Juan A. Sanchez acting in pro-se capacity, a federal prisoner currently serving a term of 168 months imprisonment under the custody of the United States Attorney General, and the jurisdiction of the Bureau Of Prisons.

Respectfully resquesting this Honorable court to modify his term of 168 imprisonment, submits the instant motion seking review and subsequent relief under title 18 U.S.C. § 3582 (c)(2), and 28 U.S.C. § 994 (o). An explicit re-troactive amendment modifiying U.S. Sentencing Guideline Manual 2K.4 cmt application N. 2 (2000 eliminating a two(-2) level "Enhancement" that had been applied in fashioning a defendant is sentence and making him eligible for modification.

Pursuant to amendment 706, 711,101, also U.S.S.G. § 1B1.10(c), of the guideline the amendments makes changes to the drug quantity table in U.S.S.G. § 2D1.1(c), itis possible for a prisoner to bring a motion to modify a term of imprisonment.
Under 18 U.S.C. § 3582 (c)(2) when a guideline range is amended and the amendemnt is made re-troactive.

## Jurisdiction:

Title 18 U.S. § 3582(c)(2). In the case of a defendant who has been sentenced to term of imprisonment based on a sentencing range that has subsequently been lowered by the sentencing commission pursuant to 28 U.S.C. § 994(o), upon motion of the defendant, or the director of the Bureau Of Prisons, or on its own motion, the court may reduce the term of imprisonment, after considering the factors set forth in section 3553(a) to the extent that they are applicable, if such a reduction is consistent with applicable policy statements issued by sentencing commission.

With this petition for reduction of sentence under 18 U.S.C. § 3582(c)(2), the defendant asks the court to apply amendment 706,711,101, also U.S.S.G. § 1B1.10 of U.S. sentencing guidelines in order to reduce his sentence. The defendant respectfully seeks a modification in his 168 months of term of imprisonment under title 18 U.S.C. § 3582(c)(2) and U.S.S.G. § 1B1.10 section 3582(c)(2) authorizes the district court to reduce the sentence imposed on a defendant who has been sentenced to term of imprisonment based on a sentencing range that has subsequently been lowered by the sentencing commission pursuant to title 28 U.S.C. § 994(o), if such a reduction is consistent with applicable policy statements issued re-troactive amendment by the sentencing commission.

Thereafter, the sentencing commission authorized courts, at their discretion, to apply amendment 706,711,101, also U.S.S.G. § 1B1.10(a) and (c).

Section 1B1.10 (a) of the united states sentencing guidelines states:
"Where a defendant is serving a term of imprisonment, and the guideline range applicable to that defendant has subsequently been lowered as a result of an amendment to the guidelines manual listed in subsection (c) below, a reduction in the defendant is term of imprisonment is authorized under title 18 U.S.C. § 3582(c)(2), if none of the amendments listed in subsection (c) is applicable, a reduction in the defendant is term of imprisonment under title 18 U.S.C. § 3582 (c)(2), is not consistent with this policy statement, and thus is not authorized." The accompanying commentary only by an amendment listed in subsection (c) that lowers the applicable guideline range" U.S.S.G. § 1B1.10 comentary.

Determining base offense level in offenses involving crack cocaine and other controlled substances.

The commission also modified the mechanism for determining the base offense level in offenses involving crack and other controlled substances. The mechanism is set forth in new subdivision (D) application note 10. See U.S.S.G. § 2D1.1 cmt. n. 10 (D) (2007). Although this determination is a bit more complicated than for offenses involving crack only, it is really not very different from the old method of determining the base offense level for combined substance, except that there is now a special marijuana equivalency table for the Quantity of crack involved, which is derived from the new ratios between crack and marijuana Quantities at each offense level.

Determine the base offense level for the Quantity of crack involved in the case, find the assigned marijuana equivalency for the crack offense level in the special table in that subdivision. See id. cmt. n. 10(o)(i)(II). Convert the crack Quantity to its marijuana equivalency under the special table.

Second, determine the combined marijuana equivalency for the other controlled substances involved in the offense by using the regular drug equivalency table (now located in subdivision(E) of application note 10), and by following the intructions in subdivision(B) of note 10. basically, for each substance, convert each drug to its marijuana equivalent under the drug equivalency table, add the Quantity in the drug Quantity table. See U.S.S.G. § 2D1.1 cmt. n. 10(B).

1

Third, add the marijuana equivalencies for all three drugs together and find the Quantity in the drug Quantity table to obtain the combined base offense level.

Thus 200 G of crack cocaine convert to 1340 KG of marijuana under the special equivalency table in subdivision (D) of application note 10; The 300 G of powder cocaine convert to 600 KG of marijuana under the regular table in subdivision(E): and the 750 G of methamphetamine converts to 1500 KG of marijuana under the regular table in subdivision (E). adding these marijuana equivalencies result in a combined Quantity of 3440 KG of marijuana (1340 KG + 60 KG +1500 KG =2900 ), which corresponds to a combined base offense level of 32 for all three controlled substances involved in the offense.

Under the old guideline, at least 5 grams but less than 20 grams of crack was assigned a base offense level of " 26 " and minimum guideline range of 63 to 78 months, which exceeded the mandatory minimum of five(5) years. Now, the same quantity of crack is assigned to base offense level " 24 " which corresponds to a minimum advisory guideline range (51 to 63 Months) that includes the mandatory minimum.

In considering a motion for re-sentencing under 18 U.S.C. § 3582 (c)(2), the court has discrection to determine whether it will elect to impose the newly-calculated sentence under the amended guidelines or to retain the original sentence.

The relief offered by the amended guideline is not automatic and not all crack offenders will benefit from it. A federal sentencing judge will make the final determination of whether an offender is eligible for a lower sentence and how much that sentence should be lowered. And, if so, how much the sentence should be reduced. Although a broad range of factors will play a role in that determination, an application note to the revised guideline emphasises that courts must pay particular attention to whether a prisoner's early release would pose a danger to individual or the community and to how the prisoner has behaved since being sentenced.

Before deciding to lower a particular defendant's sentence, a first has consider the factors listed in 18 U.S.C. § 3553 (a). It reflect the nature of the guideline-writing task congress set for the sentencing commission and how the commission carries out that task, in 18 U.S.C. § 3553 (a), congress intructed the sentencing judge to consider [ the seven (7) factors set fort in the statute ].

This honorable court has the jurisdiction to entertain this motion as it is the court of conviction and sentencing pursuant to title 18 U.S.C. § 3582 (c)(2), in other word, a reduction is not mandatory but rather is within the judge's discrection.

### RELEVANT FACT AND TRAVEL OF THE CASE

#### PRE-ARREST AND ARREST

In september of 1999, Pennsyvania Attorney General B.N.I. began an investigation into the alleged heroin, marijuana, and powder cocaine trafficking of Jimmy Hernandez, later identified as Juan A. Sanchez on numerous dates, with the cooperating individual # 3-005-99 Hereafter to as Ci made controlled purchase of heroin and powder cocaine from Mr. Sanchez in the county of lebanon Pennsylvania. The largest quantity involved was three(3) ounces of powder cocaine.

On december 7, 1999 Mr. Sanchez was arrested by B.N.I. agents based on a series of purchase by a Ci. And was charged with numerous counts of delivery of heroin, and powder cocaine. Mr. Sanchez was also charged with criminal conspiracy. At the time of arrest, a search warrant was also executed on the bussines of Sanchez and Quantity of powder cocaine, and heroin were seized. also Mr. Sanchez had in his person a New Jersey Drive License under the name of Jose N. Veras.

After Mr. Sanchez made bail on april 21, 2000, he returned several months later to small scale dealing and was turned again by his daughter's God-father who also became a state informant. again, the largest dealing was something less than (1) grams of powder cocaine. But there was one sale alleged by his daughter's God-father (ci) to have been 10.8 Grams of cocaine base (crack).

His daughter God-father (ci) also alleged that he had given a small caliber semi-automatic pistol by Mr. Sanchez during one of his purchase. Mr. Sanchez again was arrested by the same B.N.I. agents, on july 16, 2000   again he has the same counterfeit new jersey's license in his person.

## INDICTMENT

On the basic of the alleged Cocaine Base (crack) sale, and the firearm this case was referred to federal prosecution. This led to Mr. Sanchez being federally indicted for both Cocaine Base (crack), and possession of a firearm during a drug transaction.

Mr. Sanchez was indicted on march 14, 2001, by a grand jury in harrisburg, pennsylvania, and was charged with five(5) counts indictment as follows;

**Count one (1):**
manufacturing, distribution and possession with intent to manufacture and distribute **fifty (50) grams or more of Cocaine Base (crack)** in violation of 21 U.S.C. § 841 (a)(1)

**Count Two (2):**
manufacturing, distribution and possession with intent to manufacture heroin, in violation of 21 U.S.C. § 841 (a)(1);

**Count Three (3):**
manufacture, distribution and possession with intent to manufacture and distribute marijuana, in violation of 21 U.S.C. § 841 (a)(1):

**Count Four (4):**
Possession of a stolen firearm, in violation of 18 U.S.C. § 922 (j)

**Count Five (5):**
production of false identification in violation of 18 U.S.C. § 1028 (a)(1).

## PLEA AGREEMENT

On june 19, 2001, pursuant to rule 11(c) of the federal rules of criminal procedure, the united states of america, by and through martin C. Carlson united states attorney for the middle district of pennsylvania, and the defendant Juan A. Sanchez, his counsel Mrs. Lory Ulrich, assistance of federal public defender has a plea agreement as follows;

Mr. Sanchez agreed in the plea agreement with the united states attorney Mr. Martin C. Carlson to waive the five(5) counts indictment by the grant jury and plead guilty to the " reduced " charges pursuant to the plea agreement to a three felony superseding information.

3

1. At the time of sentencing on the three(3), felony of the supersending information, the U.S.A. Mr. Martin C. Calson promised to dismiss the allegations conduct characterized in the initial indictment # 1: CR-01-090. The promise related to the violation of the offense[s] listed under 21 U.S.C. § 841(a)(1), and the violation of 18 U.S.C § 922(j), included in the specifies term of the agreement.

2. At the the time of the guilty plea is entered, Mr. Sanchez shall admit to the court that he is in fact, guilty of the offenses charged in the three count in the supersending information.

3. As a matter of the agreed upon terms, the agreement only recognized that an increase of sentence or the filing of additional charge would only occur if Mr. sanchez was found to have commited a new crime while awaiting plea or sentence.

4. If Mr. Sanchez can adequately demonstrate this recognition and affirmative acceptance of reponsibility to the government, the United States Attorney Office will recomend that Mr. Sanchez receive a two(2), level reduction in Mr. Sanchez offense level for acceptance of responsibility.

5. that the a greement must be signed by Mr. Sanchez and Sanchez's Counsel, and has to received by the united states attorney's Office on or before 5:00 pm, friday, june 27, 2001 otherwise the offer shall be deemed withdrawn.

6. Mr. Sanchez signed within a timely, fashion the plea agreement " [ seven (7) day before jury selection] " june 29, 2001, and before 5:00 pm friday, june 22, 2001, as the plea agreement required by the united states attorney Martin C. Carlson. See. page 14, line 31, also as we see it was stamped on june 21, 2001 by the clerk of the district court on or before 5:00 pm, friday, june 22, 2001.

7. It is clear that Mr. Sanchez signed within a timely fashion, and submitted the plea agreement as we can see at page 14, line 31; and also on page 15, all parties signed within a timely fashion on june 19, 2001,( seven (7) day before trial, and before 5: 00 pm, friday, june 22, 2001, as the plea agreement require by the united state attorney Martin C. Carlson. ( See Exhibit # 4 )

8. Mr. Sanchez was entitled to the third(3) points for timely fashion, signed the plea agreement, and thereby permitting the government to avoid the time and expense of preparing for trial.

9. The Guideline U.S.S.G. § 3E1.1 ordinarily provide a two-(2) level downward adjustment in offense level, but subsection (b) of the guideline also authorizes a third-level reduction when the defendant has " assisted authorities in the investigation or prosecution of his own misconduct by timely notifying authorities of his intention to enter a plea of guilty, thereby permitting the government to avoid preparing for trial and permitting the government and the court to allocate their resources efficiently "

THE SUPERSEDING INFORMATION IN THE PLEA AGREEMENT WOULD CHARGE Mr. SANCHEZ WITH THE FOLLOWING THREE (3) COUNTS;

Count One (1):
Criminal conspiracy to cause interstate and foreign travel in aid of drug distribution a violation of title 18 U.S.C. § 371. The maximum penalty for that offense is imprisonment for a period of five(5) years

Count Two (2):
Causing interstate and foreing travel in aid of drug distribution, a violation of title 18 U.S.C. § 1952. The maximum penalty for that offense is imprisonment for a period of five(5) years.

4

**Count Three (3):**
Production of false identification, a violation of title 18 U.S.C. § 1028 (a)(1). The maximum penalty for that offense is imprisonment for a period of fifteen (15) years.

## GUILTY PLEA HEARING

On june 22, 2001 on or before 5:00 pm Mr. Sanchez appeared and entered a guilty plea before honorable judge william W. Caldwell, to the term of the plea agreement, which U.S.A. Martin C. Calson. wrote and signed thus forming a contract between both parties, " As the plea agreement been required by the U.S.A. Martin C. Calson. "

At the plea colloquy, the A.U.S.A. Christy H. Fawcett briefly outline Mr. Sanchez' evidence on the (5) counts indictment to Honorable Judge William W. Caldwell, and stated the following;

"Mr. Juan A. Sanchez defendant was charged in a four(4), count indictment which was filed on march 14, 2001, by the grand jury of harrisburg pennsylvania. Mr. Sanchez enter " not guilty to the indictment on march, 2001 before Honorable Judge Andrew Shiser. A.U.S.A. Ms. Fawcett, addressed the that if this case were to proceed to trial, the government would present evidence that on october 18, 1999, A CI worked with the state Attorney General's office and Bureau Of Narcoties investigation, was introduce to Mr. Sanchez at his Auto Body Shop Located at 2501 cumberland street, in lebanon pennsylvania.

During an approximate three months investigation that followed the initial introduction, Mr. Sanchez was assisted by co-conspirators, including, Juan Rodriguez Cruz, Which defendant distributed to the confidential informant, controlled substances as follows;

On october 19, 1999;    56.00 Grams of powder cocaine
On november 03, 1999;   84.04 Grams of powder cocaine
On november 04, 1999;   00.27 Grams of Heroine, which charged nothing
On november 10, 1999;   00.04 Grams of Heroine
On December 01, 1999;   00.04 Grams of Heroine

Electronic surveillance was conducted during the meetings between the informant and Mr. Sanchez. During conversation between the two of them, Mr. Sanchez " stated " that he had a stronghold on powder cocaine distribution in the lebanon area and purchase powder cocaine in kilo quantities <u>from his brother in miami, florida</u>. On another occasion, Mr. Sanchez stated that he had obtain 500 grams of <u>powder cocaine from New York</u>.

On december 7, 1999, a search warrant was executed at 2501 cumberland street. Police recovered 76.8 grams of powder cocaine, 13.41 grams of Heroine and a large quantity of cutting and packaging materials. Mr. Sanchez was arrested and charged with a state drug offense. Mr. Sanchez admitted that the drugs seized were his.

Mr. Sanchez was release on bail on the state charge in the spring of 2000, shortly after his, release, Mr. Sanchez moved to 141 south third street in reading pennsylvania, and began dealing drugs from there, as well as continuing to deal drugs in lebanon area. A second confidential informant worked with the same state law enforcement agents during this investigation as well

Mr. Sanchez told the second informant that he had obtained powder cocaine from his cousin in New York, and four other people were working with him in this drug dealing operation.

Mr. sanchez distributed drugs to the second informant as follows.

5

1. June 29, to 5, 2000;   250 grams of marijuana, and  10.8 grams of cocaine base (Crack)"
2. July 05, 2000;   635 grams of marijuana, and 3.3 grams of heroine
3. July 10, 2000;   338 grams of marijuana, and 0.83 grams of powder cocaine
4. July 11, 2000;   2.9 grams of heroine

On july 16, 2000, a search warrant was executed, and Mr. Sanchez was arrested. upon Mr. Sanchez's first arrest, defendant had falsely identified himself as Jose N. Veras. During the second search, police seized a false New Jersey Drive's License in the Name of Jose N. Veras.

Upon Mr. Sanchez's second arrest defendant admitted to law enforcement agents, that he " sold " drug and just prior to the execution of the search warrant he had delivered(50) grams of powder cocaine to robert and deck and also phillip parbel.

During subsequent interviews, these individuals confirmed that the defendant distributed this specific quantities "(50)" grams of powder cocaine to them. The police retrieved 5.7 and 0.53 grams of powder cocaine from these individuals. This was the remaining quantities that was previously delivered by Mr. Sanchez

The Court;  Ask Mr. Sanchez that was a fair statement by  A.U.S.A.  Ms. Fawcett;

Mr. Sanchez:  yes but the only thing that it was  10.8 of cocaine base (crack).

The court;  Ask to Mr. Sanchez,  How he was going to plead to each of the government is three(3) charges of the superseding information;  Guilty or not Guilty?

Defendant;  Say Guilty

## THE DEFENSE REACTION AND OBJECTIONS AT THE PLEA HEARING

Mr. Sanchez disagreed with the plea inflation, it so disillusioned to Mr. Sanchez with his plea that he sought to withdraw it.  Mr. Sanchez vehemently disagreed with his guilty plea hearing.

His public defendant Ms. Lory Ulrich, had commented at the plea hearing; that with respect to the guideline calculation this is probably " one of the most difficul case I have ever had to predict " and frankly I think that the guideline could come out any where between 6 and 17 years " WITH POTENTIAL ENHANCEMENTS " so I 'm not sure where it may fall at this point. See pg. 3, line 18-23.

Also Ms. Lory Ulrich, had commented with respect to the trial he is admitting that the cocaine he was selling was coming from new york and miami. So he is admitting that. The one issue that he believes that— we believe that is up in the air is whether " crack " was delivered on june 29, and whether it we could get those tested. That is only a matter of 10.8 " Crack " cocaine, but I think beyond that he is admitting to the drugs that they claim he delivered. Could I have a minute with my client.

Ms. Ulrich; He is satisfied with those facts.

The Court; all right there is an issue about whether it is " crack ", but other than that is the statement that miss Fawcett made a fair statement ?

Ms. Sanchez; yes that is correct

6

Hence, Mr. Sanchez maintains that his guilty plea was not made voluntarily and intelligently. This was further aggravated when counsel informed Mr. Sanchez at the review of the plea agreement " that he would only receive a maximum of five (5) years under the violation of 18 U.S.C. § 371, 18 U.S.C. § 1952, and 18 U.S.C. § 1028 (a)(1) on the superseding information. Nor did counsel explain the true nature of the charged offense.  Telling Mr. Sanchez that in pennsylvania, do not harvest drugs for sell" The superseding information in the plea agreement did not contain any reference or stipulation to any enhancement.

Mr. Sanchez does not proclaim his innocence concerning drug dealing, he is only saying that he is not guilty of the charge in the information because he did not travel interstate commerce to obtain the drug nor did he direct anyone to travel interstate commerce to obtain the drug. Mr. Sanchez asserts that the A.U.S.A. Ms. fawcett only proffered the charge because Mr. Sanchez " told the two informant that he was receive drugs from miami and New York, and that was one of the expectation why Mr. Sanchez argued throughout this case.

**ON NOVEMBER 1, 2001, MR. SANCHEZ FILED A MOTION TO WITHDRAW HIS GUILTY BECAUSE HE DID NOT UNDERSTAND THE CHARGES:**

During the plea hearing, the court failed to meet the minimum requirement of rule 11 (C), that it must explain the nature of the charges.  This rule sets forth requirements for a plea allocution and is designed to ensure that Mr. Sanchez's plea of guilty is a voluntary and intelligent choice among the alternative course of action open to Mr. Sanchez.

Hence, Mr. Sanchez's plea can't be considered voluntary unless he receives real notice of the true nature of the charges agains him, which is the first and foremost universally recognized requirement of due process.

Mr. Sanchez plead guilty to the following information:

**Count One (1):** Conspiracy to cause interstate and foreign travel in aid of drug distribution. 18 U.S.C. § 371

**Count Two (2):** Causing interstate and foreign travel in aid of drug distribution 18 U.S.C. § 1952 (a)(3).

**Count Three (3):** Producing a false identification. 18 U.S.C. § 1028 (a)(1).

The above offenses contained several elements that must be explained to Mr. Sanchez before he accepts a guilty plea, for example, The court must inform to Mr. Sanchez that in order to be found guilty of a conspiracy, there must be (1) A conspiracy, and (2) that two or more person know of the conspiracy with the intent to violate a particular law.  This was not done in this case.

Nowhere in the transcripts of the guilty plea proceeding do we see where this was done.

Nor can a person conspire with an informant or undercover police officer to violate the law, this information was omitted.

7

## THE DISTRICT COURT IS DECISION TO DENY THE WITHDRAWAL OF GUILTY PLEA

The district court acknowledged a technical fault with its explanation of the elements of conspiracy. However, it helped that Mr. Sanchez was not prejudiced by the shortcoming because that totality of circumstances demonstrated that he understood the charge.

The district court utilized this statemet to deny the motion to withdraw the guilty plea in its memorandum opinion filed december 12, 2001.

Mr. Sanchez asserts that the A.U.S.A. Ms. Fawcett only proffered the charged because Mr. Sanchez " told " the two informants that he was receiving drugs from miami and New York. The court did not explain the elements of the offenses charged or the nature of the charges against Mr. Sanchez

If the court would have explained the elements and the severity of the sentence connected with the charges of elements, Mr. Sanchez never would have plead guilty to the superseding information.

Mr. Sanchez does not proclaim his innocense concerning drug dealing but is not guilty of the charge in the superseding information because " he did not travel interstate commerce to obtain the drugs nor did he direct anyone to travel interstate commerce to obtain drugs.

Nor can a person conspire with a informant or undercover police officer to violate the law.

## SENTENCING CALCULATION FIRST PRE-SENTENCE REPORT INVESTIGATION

After having received the denied motion to withdraw the guilty plea. The court request the preparation of a presentence report, and at that point the court schedule further proceeding to resolve any dispute or any other matter of that kind, and also schedule sentencing.

after having recived the first P.S.I. and having reviewed that report, Mr. Sanchez became comflicted with his public defender Ms. Lory J. Ulrich Mr. Sanchez through his public defender Raized several objections regardles to the drug weight historical data provided by phillip parbel and betty deck, Mr. Sanchez leadership role, of the involvement of a possession a dangerous, weapon, or to obstruction of justice.

The U.S. probation officer, Ms. Lori A. Baker whom prepared the P.S.I. on february 6, 2002, [K]nowingly, [I]ntentionally, and [V]oluntarily and constructively amended the superseding information pursuant to 18 U.S.C. § 371, 2x1.1, 18 U.S.C. § 1952, 2F1.2 The substantive offense for both counts of drug offense are covered under U.S.S.G. § 2D1.1

Constructive amendment to the superseding information occurred when the defendant was sentenced to a different additional set of evidence ( uncharged offense ) and grouping into two counts for sentencing purpose.

Counts 1 and 2, which involve conspiracy and an underlying interstate travel in aid of drug distribution offense, are grouped into a single group under U.S.S.G. § 3D1.2 (b), because they involved the same victim and two or more acts or transaction connected by a common criminal objective. count(3) possession of false identification document is not grouped with count 1, and 2 because it involves a legally distinct offense. The probation officer mrs. Lori A Baker assigned offense level 8 and no enhancement See P.S.I. pg 6-line 29, The guideline for an 18 U.S.C. § 1028(a)(1) offense is U.S.S.G. § 2L2.2 that section provides a base offense of eight (8).

8

The guideline for an 18 U.S.C. § 371 offense is U.S.S.G. § 2X1.1 that section provides that the base offense level from the guideline for the subtantive offense, plus any adjustments, be used. The guideline for an 18 U.S.C. § 1952 offense is U.S.S.G. § 2F1.2. That section also provides that the base offense level from the guideline for the substantive offense, plus any adjustments, be used. In this case the substantive offense for both counts, drug offenses, are covered under U.S.S.C § 2D1.1. The government is evidence based on controlled purchase, seizure, and historical data provide by phillip parbel and betty Deck, establishes that Mr. Sanchez was involved with 3.818.03 grams of powder cocaine, 10.8 grams of cocaine base (crack), 28.34 grams of heroine, and 1.273,9 grams of marijuana. These amounts converts to a marijuana equivalent of 1.009.22 kilograms. because this amount is very close to the guideline break point of 1.000 kilograms of marijuana, and recognizing that drug calculations based on historical data are some what substective, it is believed that Mr. Sanchez can definitively be held responsible for between 700 and 1.000 kilograms of marijuana resulting in a base offense level of thirty 30

Also include a two (2) point adjustment for each relevant conduct of drug transaction involving a dangerous weapon, leadership role, and obstruction of justice.

Calculating the quantity of drugs, the report arrived at a level of base offense thirty(30) to be applicable. In additional, a total of six(6) levels were imposed for other guideline enhancement finding. This calculation put Mr. Sanchez at a high base levels of 36 on the guideline range, two(2) point reduction for acceptance of responsibility, it was their recomendation that Mr. Sanchez be sentenced to the total base offense level of thirty-four (34).

Certainly there was reference to a base offense level in the P.S.I. but Mr. Sanchez was never advised what it was utilized for other then to establish drug weights that were not contained in the indictment or in the superseding information and not admitted by Mr. Sanchez.

Mr. Sanchez did not admit to specific amounts of 3.818.03 grams of cocaine that were in the P.S.R. he did not admit to the involvement of a dangerous weapon, acting in a leadership role, or to obtruction of justice, neither did a grand jury find that Mr. Sanchez was guilty of these enhancement

Therefore the A.U.S.A. Ms. Fawcett and Mr. Sanchez's counsel Lory J. Ulrich, probation officer Ms. Lori A. Baker must have forgot or over looked the fact remains that this is guilty plea case dominated by the plea agreement and rule 11 component, the base offense level was admitted during the agreement, not the rule 11 hearing.

The plea agreement has at page 3,line 4, stated that at the time of sentencing on the indictment filed under criminal number 1:cr-01-090, the U.S.A. Mr. Martin C. Calson agreed to dismiss the allegation conduct characterized in the five (5) count indictment above. The agree related to the conduct of the violation of the offense[s] listed under 21 U.S.C. § 841(a)(1), and the violation of 18 U.S.C. § 992(j) included in the specifies term of the agreement.

Mr. Sanchez's counsel Ms. Lory J. Ulrich, the probation officer Ms. lori A. Baker, as well as the A.U.S.A. Ms. Fawcett likewise constructively amended, has misinterpreted the statute, misrepresented it and applied it in violation of the constitution and law of the united state. By increasing Mr. Sanchez's sentence by attributing 3.818.03 grams of powder cocaine, Mr. Sanhcez's leadership role of the involvement of a dangerous weapon obstruction of justice and enhancement under " APPRENDI "

Under the due proccess clause of the fifth amendment and the notice and jury trial guarantees of the sixth amendment, any fact ( other than prior conviction ) that increases the maximum penalty for a crime must be charge in an " INDICTMENT " submitted to a jury, and proved beyond a reasonable doubt. Id, 526 U.S. 227, 243 N. 6, 119 S. ct. 1215, 1224 N. 6 (1999).

9

A year later, the supreme court reiterated this principle in APRENDI V. New Jersey Id., 530 U.S. 466, 476, 120 s.ct. 2348 2355 (2000). Most recently, in blakely V washington, the supreme court provided that statutory maximum for "APRENDI" purpose is the maximum sentence a judge may impose solely on basic of the facts reflected in the jury veridict or admitted by the defendant id, 124 S.CT. 2531, 2537 (2004)

In this area of review, Mr. Sanchez avers that the A.U.S.A. Ms. Fawcett breached the negotiated plea agreement in various aspects. As part of inducing Mr. Sanchez to plea guilty to the three counts superseding information, The U.S.A. Mr. Martin C. Calson promissed in the plea agreement to dismiss the allegation conduct characterized in the five (5) counts indictment above. The agree related to the conduct of the violation of the ofense[s] listed under 21 U.S.C. § 841 (a)(1), and the violation 18 U.S.C. § 922(j), under criminal number. 1:cr-01-090.

The superseding information, in the plea agreement did not, howsoever, contain any stipulation or any reference to the amount of drug involved, or Mr. Sanchez's leadership role of the involvement of a dangerous weapon, obstruction of justice.

In accordance with the plea "contral" binding effect, the A.U.S.A. Ms. Fawcett impermissibly, with no reliable or reasonable justification, sought on the above mentioned enhancements, breached the plea agreement.

On page 11 line 23, of the plea agreemnet stated. Nothing in this agreement shall protect the defendant in any way from prosecution for any offense committed after the date of this agreement, including perjury, false declation, or false statement, in violation of title 18 U.S.C. section 1621, 1623, or 1001, or obstruction of justice, in violation of title 18 U.S.C. section 1503, 1505, or 1510, should the defendant commit any of those offense during the cooperation phase of this agreement. Should the defendant be charged with any offense alleged to have occurred after the date of this agreement, the information and documents disclosed to the united states during the couse of the cooperation could be used against the defendant in any such prosecution.

As a matter of the agreed upon terms, the plea agreement on pg 12 line 28, only recognized that the defendant understands that it is a condition of this plea agreement that the defendant refrain from any further violations of state, local or federal law while awaiting plea and sentencing under this agreement. The defendant acknowledges and agree that if the government recceives information that the defendant has committed new crimes while awaiting plea and/or sentencing in this case, the government may petition the court and, if the court finds by a preponderance of the evidence that the defendant has committed any other criminal offense while awaiting plea or sentencing, the government shall be free at its sole election to either: (a) withdraw from this agreement, or (b) make any sentencing recommendations to the court that it deems appropriate. The defendant further understands and agrees that, if the court finds that the defendant has committed any other offense while awaiting plea or sentencing, the defendant will not be permitted to withdraw any guilty pleas tendered pursuant to this plea agreement, and the government will be permitted to bring any additional charges which it may have against the defendant.

To represent a breach of this agreement, the defendant had to commit other crime while awaiting his federal plea or sentence. Therefore is no evidence that the government was ever informed of continued criminal activities during the specified federal period by the defendant.

Mr. Sanchez should be sentence under the guideline pursuant to the fact to which he admitted in his plea agreement. The statutory maximum for count 1 and 2 was five(5) years each-but that liability is capped at ten (10) years. Section 5G1.2 of the sentencing guideline requires a sentencing court to impose concurrent sentences in implementing the guideline sentence, but court may impose consecutives sentence if it follows the proccedure for departures.

1. Sanchez's counsel Ms. Lori J. Ulrich, probation officer Ms. Lori A. Baker, and the A.U.S.A. Ms.
2. Fawcett, knew that the only way to keep Mr. Sanchez off the street would be to illegally increase his sentence, with hopes that he would not figure out that the aforementioned, conspired to impose the illegal sentence.

## SENTENCING CALCULATION

### SECOND PRESENTENCE REPORT INVESTIGATION

5. Asserts further that the U.S. probation officer Ms. lori A. Baker, whom prepared the P.S.I. on february
6. 6, 2002, and revised same on february 22, 2002 with an addendum on the subject. Forwarding a copy of the honorable Judge Willian W. Caldwell, to the defendant, defense counsel, Ms. Lori J. Ulrich, and the
7. A.U.S.A. Ms. Fawcett.

8. The probation officer Ms. Lori A. Baker revised the presente report with an addendum to the subject
9. the modification to presente report to note the following changes;   See Exhibit # 2 )

10. (1)... Paragraph 23 and 28 ( base offense level-group one ) and paragraph 35 and 40 ( Multiple count adjustment)-have been revised based on new drug calculations which result in a lower offense level,

11. (2)... Paragraph 42 ( adjustment for acceptance of reponsibility ) the additional one level
12. reduction for timely notification of intention to enter a guilty plea has been " REMOVED BASED ON INFORMATION PROVIDED BY A.U.S.A. MS. FAWCETT.

13. (3)... Paragraph 44 (total offense level )- has been corrected based on the above charge to
14. thirty four (34).

15. (4)... Paragraph 55 ( other arrests- the disposition of this charge is now included, and

16. (5)... Paragraph 72 and 81 ( sentencing options ) now reflect a guideline imprisonment range of 168 to 210 months and a fine range of $ 17.500 to $ 175.000

18. After having received the second P.S.R. and having reviewed that report with an addendum modification. The defendant advised his public defender Ms. Lory J. Ulrich that he was entitled to the
19. third(3) point as he had in the first rejected P.S.I. because Mr. sanchez signed within a timely fashion
20. on june 19-2001, all parties signed the plea agreement " [seven (7) day before jury selection" june 29, 2001, and before 5:00 pm friday june 22, 2007 as the plea agreement required by the U.S.A. Mr. Martin C.
21. Calson. See page 14, line 31, also as we see it was stamped on june 21, 2001 by the clerk of the district court on or before 5:00 pm, friday june 22, 2001.  See Exhibit # 4 )

22. Adjustment for acceptance of responsibility; pursuant to U.S.S.G. 3E1.1 ( a ), if the defendant clearly demostrates acceptance of responsibility, decrease the offense level by two (2). During the
23. probation interview, the defendant stipulated to the fact in plea agreement and accepted responsibility
24. for those facts. Pursuant to U.S.S.G. 3E1.1 (b), if the defendat timely provides complte information to the government concerning his involvement in the offense or enters a plea or guilty in a timely fashion
25. manner, decrease the offense level by an additional (1).  In this case the defendant accepted responsibility during the probation interview;

26. On paragraph 41 of the P.S.R. the probation officer Ms. Lori A. Baker stated; Adjustment for acceptance of responsibility; Although Mr. Sanchez attempted to obstruct or impede justice during the
27. course of the investigation, he subsequently entered a guilty plea and made admisions to the probation officer regarding the offense of conviction, therefore, Mr. Sanchez appears to have accepted
28. responsibility and a two-level reduction under U.S.S.G. § 3E1.1 (a) and application note is appropriate(2)

11

## CHANGE OF COUNSEL

Defendant became conflicted with his public defender, Ms. Lory J. Ulrich, over his guilty plea hearing, over the denied motion to withdraw his plea, the disagreed with the first and second P.S.I. and the rejected evidence inflation, so when these issue became the course of the remaining case, Mr. Sanchez asked his family to retain **Allen C. Welch Esq.** To defend all the <u>objections</u> that had been filed by his prior public defender, Ms. Lory J. Ulrich at sentencing hearing because of his reputation as an Inyerlding defense attorney. This was to be a full sentence for which Mr. Sanchez's family pay the sum of $ 10.000 dollar $ 4.000 Thousand by check and $ 6.000 Thousand cash.

Sometime after Ms. Ulrich filing of these objection but before sentencing actually too place, Mr. Sanchez hired the best attorney that he could find in the area of harrisburg, costopoulos & Welch and reviewed the P.S.I. with Mr. Welch after his family paid to Mr. Welch, and after the court had accepted Welch as his attorney of the record. Mr. Sanchez engaged Mr. allen C. Welch,Esq. entered an appearance on behalf of Mr. Sanchez, thereafter, Attorney Ms. Lory J. Ulrich's motion to withdraw as a counsel was granted. See § 2255 hearing trans. pg 7 line 18-25 also pg 26 line 3-4.

Mr. Sanchez explained to Mr. Welch all the objections what they had done and that he was not guilty of all of these enhancement that they had invented, and that why Mr. Sanchez made a contract, to hire Mr. Welch to defend him to go through all these enhancement. That Ms. Ulrich already filed those objections at that time. See § 2255 hearing trans. pg. 25 line 24 through to, pg. 25 line 1-14 also pg. 27, line 22-24. See **Exhibit # 1**

Mr. Sanchez did discuss those objection in the presentence report with Mr. Welch, and that is why Mr. Sanchez hired Mr. Welch to defend him at sentencing Mr. Welch hired his Private investigator, Mr. Matthew hunt, who interviewed the Two (2) mayor customer of Mr. Sanchez, Mr. Phillip, Parbel, and Ms. betty deck. See 2255 hearing trans. pg. 9 line 11-14. See **Exhibit # 1** )

Mr. parbel and Ms. Deck told Mr. Welch is investigator, Mr. Mattew Hunt, that the statement made by the government had been exaggerated, above the amount of cocaine that they received from Mr. Sanchez were substantially less than the amount of cocaine that the government investigators had accredited to parbel and Deck.

Furthermore, both phillip parbel and Betty Deck indicated in that statement that neither of them knew that Mr. Sanchez was selling Crack cocaine, nor had they known him to possess a gun and both also indicated that they did not know that Mr. Sanchez was in an Organization with four other person. See [ exhibits D2 and D3 ], for the record of the 2255 hearing trans, pg. 10 line 13.

These statement were consistent with prior statments, Mr. Parbel and Ms. Deck had provided these statements to Ms. Lory J. Ulrich's investigator which had been transferred to Mr. Allen C. Welch prior to sentencing.

At cumberland prison one day before sentencing hearing, that was the second and the last time that Mr. Sanchez and Mr. Welch talked over the objections. See § 2255 hearing trans pg. 28 lines 17-21 also pg 3 Line 2-7. Mr. WWelch indicated to Mr. Sanchez that, when they come to the court, that Mr. Welch was not going to permit sentencing that day, and that Mr. Sanchez should not allow to be sentencing that day. Because Mr. Welch had asked the court for sixty (60) days extension because two (2) more witnesses who were to come and mr. Welch was sending his privated investigator, Mr. Matthew Hunt, so that Mr. Welch could fight further the case. Mr. Welch advised to Mr. Sanchez that if a sentence in excess of five (5) years was imposed, Mr. Welch would appeal the sentence because his time was largely occupied by his vacation See motion to postpone sentence, dated June 20, 2002 also motion for continuance, date june 21, 2002. See **Exhibit # 7** )

1.     Mr. welch advised Mr. Sanchez that at point, since Mr. welch had done nothing, welch agreed to file a notice appeal if the defense failed to obtain a sentence of about five (5) years for the objection in the P.S.I; But Mr. Sanchez did not contract Mr. welch to do that, so Mr. Sanchez gave Mr. welch some papers to have enough argument to fight the appeal if the defense failed at sentencing. See. 2255 hearing trans. pg. 5 line 8-17, pg. 9 line 18-21, pg. 6 line 22-25, also pg. 41 line 9-21. **Exhibit # 1**

    This was further aggravated when both counsel informed Mr. Sanchez at the review of the plea agreement, and the P.S.I. That Mr. Sanchez would receive a maximum of five (5) years under title 18 U.S.C § 371, 18 U.S.C. § 1952 (a)(1), and 18 U.S.C § 1028 (a)(1), these violation had their own penalties of five (5) years sentence runing concurrently binder by the plea agreement.

## SENTENCING HEARING JULY 23, 2002

    At sentencing hearing, phillip parbel, Betty, and Mr. welch's privated investigator, Mr. Matthew hunt, were subpoenaed by Mr. welch. Despite the presence of Mr. parbel and Ms. Deck at the sentence hearing and the contradiction in their statements as expressed in the pre-sentence report and the report of Mr. welch's privated investigator, Mr. Matthew Hunt, as well the investigator for the public defendant's office. See. 2255 hearing trans. pg. 12 line 6, and pg. 14 line 19-20.

    Mr. Sanchez was brought into the courtroom by the U.S. Marshalls for sentencing and eventually phillip parbel, Betty Deck, Welch's privated investigator Mr. Matthew Hunt were there also. The Judge do not was in the courtroom yet, five (5) minute later Mr. welch came out from the Judge's Chamber of the courtroom with the A.U.S.A. Ms. Christy H. Fawcett. Mr. Welch turned around against Mr. Sanchez he explained to Sanchez that he went into a conference with A.U.S.A. Ms. Fawcett and the Judge of record and advised Mr. Sanchez that A.U.S.A. Ms. Christy H. Fawcett willing to bend one of the points for acceptance of responsibility if Mr. Sanchez withdraw all the objection because the trial would last about three hours, and the Judge of record would be unhappy about carrying on with the hearing in the all the objection, that Mr. Sanchez would have five (5) minute for a audience to review these. See 2255 hearing trans. pg. 12 line 6-25, pg 13 line 13-25, pg. 36 line 2-12, pg. 26 line 23-25, through pg. 27 line 1-12.

    Mr. Welch told Mr. Sanchez to think about that point. Mr. Sanchez told him that the point were bringing up was one of his objections and Mr. Sanchez already had pointed it out to him, and that was one of his point and Mr. Sanchez was going to argue that point, and phillip parbel and Betty Deck were there in the courtroom, Sanchez advised Mr. Welch to how can they, or how he come to agreement with A.U.S.A. Ms. Fawcett to exchange four points for only one point for acceptance of responsibility when Welch knew that Mr. Sanchez deserved that point with out withdraw his objections. Mr. Sanchez hired so he would fight all the objections. See. 2255 hearing trans. pg. 27 line 13-25. See **Exhibit # 1** )

    When Mr. Welch and Mr. Sanchez were discussing that point, Mr. Welch told Mr. Sanchez to do not worry, that it was the Judge's decision because Mr. Sanchez had exchanged the indictment for the superseding information, and there were at least five(5) years just for charge, and if the Judge did not give Mr. Sanchez the five (5) years Mr. Welch was going to appeal to consider that point and see what the Judge was going to say about that. See. hearing trans. pg. 12 line 9-17, TO line 23-25, pg. 13 line 19-25 pg. 14 line 1-9, pg. 29 line 23-25, also pg. 41 line 9-22 See **Exhibit # 1** )

13

1. In this case, the record indicates that Mr. Welch was mislead by A.U.S.A. Christy H. Fawcett's decision to permit Mr. Sanchez to withdraw the objection to the presentence report which had previously been filed by the prior counsel, Ms. Lory Ulrich. These objections to the amounts of drugs of the relevant conduct of Phillip Parbel and Betty Deck, leadership role, Dangerous weapon, and obstruction of justice, and were premised upon the alleged statements of Phillip Parbel and Betty Deck had already provide to Mr. Welch's investigator Mr. Matthew Hunt, indicating that the information obtained in the P.S.I. "was false" had they taken the stand. See 2255 trans. hearing pg. 12 line 6-13, pg. 13 line 2-12, pg. 36 line 2-12, pg. 37 line 22-23. See **Exhibit # 1** )

It is unknown what they would have said and would be even more speculative to guess at what the court would have done. By withdrawing the objection, however Mr. Sanchez was deprived of an opportunity to his contest these facts. At the time, Mr. Welch characterized this trade off as bringing Mr. Sanchez " closer to five (5) years guaranteed," after the fact, Mr. Sanchez considered this to be a very loose statement, compared to his understanding of what " close to five(5) years " should be.

But at the sentencing allocation, Mr. Sanchez's Statement reflects that Mr. Sanchez was encouraged by counsel Mr. Welch to withdraw the objection that the Judge would be came very angry over all the fighting the defense planned over the enhancement. See 2255 hearing trans. pg. 27 line 4-12, also see the sentencing trans. pg. 5 line 8-9, pg. 6 line 10-12. See **Exhibit # 1** )

* Defendant: I don't want you to get upset, so I will accept it,

* Defendant: first of all, I'd like to ask for forgiveness to the united states, I declare myself guilty of all the thing that "were invented."

At the 2255 evidential hearing the A.U.S.A Ms. Fawcett testifier the reason why she did not give the third point for acceptance of responsibility to Mr. Sanchez, and explain how did the objections previously filed by prior counsel Ms. Lory Ulrich came to be withdrawn. she testifier as follows.

That there was a discussion between herself and Mr. Welch concerning the fact that she had witnesses prepared to testify concerning the drug weights, and she proposed to Mr. Welch or Mr. Welch proposed to her, she can't remember who made the initial proposal that there be a compromise so that the witness would not testify concerning the drug weights, and the compromise was that she would recommend to the court that Mr. Sanchez receive a third point, or point of his offense level score for acceptance of responsibility.

A.U.S.A. Ms. Fawcett did not believe Mr. Sanchez was entitled to that point legally because Mr. Sanchez had, normally that third point is credited to a defendant if the defendant timely admits his guilt and the government is not required to go through the expense and the work of preparing for trial. In this case that hadn't happened. Mr. Sanchez was sheduled for trial on a monday, on the friday before that monday just three (3) day before that monday, A.U.S.A. Ms. Fawcett received a call from Mr. Sanchez's defense attorney Ms. Lory Ulrich, saying that Mr. Sanchez wanted to plead guilty. So Mr. Sanchez express desire to plead guilty wasn't presented to A.U.S.A. Ms. Christy Fawcett until shortly before the trial, and A.U.S.A. Ms. Fawcett had prepared considerably for trial. See Evidential hearing trans. pg. 35 line 25 through pg. 36 and pg. 37 line 1-3. See **Exhibit # 1**

As we can see in the plea agreement it is clear that Mr. Sanchez signed within timely fashion, and submitted the plea agreement, all parties signed within a timely fashion on june 19, 2001 ( seven (7) day before trial scheduled, and before 5: 00 pm, friday, june 22, 2001. The plea agreement was stamped on june 21, 2001 by the clerk of the district court on or before 5: 00 pm friday june 22, 2001.

14

1.  The plea agreement must be signed by Mr. Sanchez and Sanchez's Counsel, Ms. Lory Ulrich and has to received by the United States Attorney's office on or before 5:00 pm friday June 22, 2001 otherwise the offer shall be deemend withdraw as the plea agreement required by the United States Attorney **Mr. Martin C. Calson.** See Exhibit # 4

2.  Mr. Sanchez was entitled to the third (3) point for timely fashion, signed the plea agreement, and thereby permitting the government to avoid the time and expense of preparing for trial.

3.  The guideline U.S.S.G § 3E1.1 ordinarily provide a two (2) level downward adjustment in offense level, but subsection (b) of the guideline also authorizes a third (3) level reduction when the defendant has " assisted authorities in the investigation or prosecution of his own misconduct by timely notifying authorities of his intention to enter a plea of guilty, thereby permitting the government and the court to allocate their resources efficiently.

4.  Consequently, Mr. Sanchez's Sentencing hearing was held after reviewing Mr. Sanchez's pre-sentence report, the court concluded that his total offense level was 30 which was added a two (+2) point enhancement for possession of Dangerous weapon, pursuant to U.S.S.G. § 2D1.1 (b)(1), added a two (+2) point enhancement for role in the offense pursuant to U.S.S.G. § 3b1.1 (c), added a two (+2) point enhancement for obstruction of justice pursuant to U.S.S.G. § 3C1.1.

**ADJUSTED OFFENSE LEVEL FOR GROUP ONE IS THIRTY- SIX 36**

Two (-2) point reduction for acceptance of responsibility. Therefore Mr. Sanchez appears to have accepted responsibility and two level reduction under U.S.S.G. § 3E1.1 (A).

Guideline provision: based on total offense level of thirty-four (34) and a criminal history category of II, the custody range is <u>168 to 210 months.</u>

Further, Mr. Sanchez withdrew his objections to the pre-sentence report in order to receive the benefit of an additional point for acceptance of responsibility.

The court also concluded that Mr. Sanchez' criminal history category II as a result, Sanchez faced a corresponding range of <u>155 to 188 Months.</u>

Base on the offense level for Mr. Sanchez Sentece on count I and II. the government argues that the base offense level <u>for count I and II was calculated correctly.</u> Upon a review of the sentencing guidelines applicable at the time Mr. Sanchez was sentenced, it is clear that § 2D1.1 applies to Mr. Sanchez's sentence. U.S.S.G. § 2x1.1 (A), the guideline section for 18 U.S.C § 371 require, for the calculation of a base offense level, the use of the of thebase offense for underlying substantive offense. The guideline section for 18 U.S.C. § 1952, U.S.S.G. § 2E1.1 (A)(2), also require the use of the offense level applicable to the underlying unlawful activity for which " the travel or transportation was undertaken; the underlying offense for count I and II is a Drug offense. Thus, U.S.S.G. § 2D1.1 is the proper section for the calculation of the base offense levelfor those counts. See **EXHIBIT # 3** )

Although Mr. Sanchez objects to the use of § 2D1.1 to enhance his sentence under 18 U.S.C. § 1028 They construe his claim as an objection to the use if § 2D1.1 with regard to count I and II the court applied § 2D1.1 with regard to count I and II the court applied § 2D1.1 was applied to those count and not to count III.

**ANALYSIS:**

**A. The petition for reduction under 18 U.S.C. § 3582 (c)(2)**

With this petition for reduction of sentence under 18 U.S.C. § 3582 (c)(2), Mr. Sanchez ASK the court to apply amendment 706, 711, 101, also U.S.S.G. § 1B1.10 of U.S. Sentencing guidelines in order to reduce his sentence from 168 months to a term of 121 months. Mr. Sanchez respectfully seek a modification in his term of imprisonment under title 18 U.S.C. § 3582 (c)(2) and U.S.S.G. § 1B1.10. Section 3582(c)(2) authorizes the District Court to reduce the sentence imposed on a defendant who has been sentenced to term of imprisonment based on a sentencing range that has subsequently been lowered by the sentencing Commission pursuant to title 28 U.S.C. § 994 (o), if such a reduction is consistent with applicable policy statements issued re-troactive amendment by the sentencing Commission.

Thereafter, the sentencing commission authorized Court, at their Discretion to apply amendment 706, 711, 101, Also U.S.S.G. § 1B1.10 (a) and (c).

Mr. Sanchez respectfully request that the court take the following information into account when making its discretional determination whether to apply United States Sentencing Guidelines Amendment 706 711, 101 Also U.S.S.G. § 1B1.10 (a) and (c) towards his sentence and re-sentence him at the new two (-2) level Guideline Reduction.

Mr. Sanchez Has;

(1)....Completed his financial responsibility by paying all his fines and assessment.
(2)....Maitained excellent work reports and assessments throut his entire incarceration and maintain clear conduct.
(3)....Authored a self-help biography entitled;
(4)....Mr. Sanchez has had no incident reports during his current incarcertion.
(5)....Mr. Sanchez maintains excellent family and community ties.
(6)....After serving eight (8) years in midium and low- custody facilities became soon to be eligible for minimum custody to C.C.A.
(7)....After fulfilling his federal obligation, Mr. Sanchez will be deported to his country of citizenship Dominican Republic..
(8)....Mr. Sanchez has an active lodged ICE detainer, However due to his ICE detainer, he is exempt from participating an institutional R.P.P. program.

(9)....Good health and is currently 40 years of age.    ( See Exhibit # 8 )


The Purpose of the Original sentence has been accomplished:


Mr. Sanchez has made huge steps toward becoming a law-abiding and productive alien. During his incarceration he has equipped himself with the tools necessary to succeed in society, re-build his family bond, and make the most out of any opportunities that avail themselves to him once he returns to his country.

Relevant to this case, amendment 706,711,101, Also U.S.S.G. § 1B1.10 (a)(c) reducer the top and the middle offense level which was used to calculate his sentence. The record of this matter reflect that at the time of sentencing the Honorable Judge Willian W. Caldwell in his discretion, determined that a term at the middle point within the applicable guidelines range was appropriate.

Offense level 33 is coupled with criminal history category 2 Mr. Sanchez's sentencing expouse would be reduce from 168 months down to 121 months imprisonment in the lower end of the guideline

16

Mr. Sanchez believes that the imposition of a sentence which tends toward the lowest point of the amended range is consistent with all factors which must be considered. As was already noted, the offense of conviction were not of a violent nature. Last, the undersigned finds that a sentence at or near the lowest point of this range would both reflect the seriousness of the Mr. Sanchez's conduct as well as continue to ensure public safety as it still reflects a substantial sentence for the offense in question. Furthermore, a sentence at the low end of the amended guideline range is in accord with the original sentence imposed by the court. Therefore, a sentence at the lowest end of the guideline range is consistent with the law and appropriate under the circumstances.

### ISSUE:

Mr. Sanchez qualify for the two (-2) levels sentencing reduction pursuant to U.S.C. § 1B1.10(a) and (c), Amendment 706, 711, 101, Moreover, none of the policy Statements that were set forth in U.S. sentencing guideline manual 1B1.10 Application n. 2 and § 1B1.10 cmt, ( backg'd ) applied to the question, they did not prohibit the application of the guideline in an advisory fashion.

### FACT

Mr. Sanchez was indicted on Count I manufacturing, Distribution and possession with intent to manufacture and distribute fifty (50) Grams of Cocaine base (crack) in violation of 21 U.S.C. § 841(a)(1), which carries a mandatory minimum of ten (10) years. The Honorable Judge William W. Caldwell imposed a sentence of 168 months which exceed the mandatory minimum sentence. Mr. Sanchez sentence on Count I and II. The government argues that the base offense level for Count I and II was Calculated Correctly. it is clear that § 2D1.1 applies to Mr. Sanchez's sentence. § 2x1.1 (a) the guideline section for 18 U.S.C. § 371, requires for the calculation of a base offense level, the use of the base offense level for the underlying substantive offense. The guideline section for 18 U.S.C. § 1952, U.S.S.G. § 2E1.1 (a) (2), also requires the use of the offense level applicable to the underlying unlawful activity for which " the travel or transportation was undertaken. The underlying offense for Counts I and II is a **DRUG OFFENSE** Thus, U.S.S.G. § 2D1.1 is the proper section for the calculation of the base offense level for those Counts.

### ARGUMENT:

Pursuant to amendment no. (9), and 1B1.10. th United States Sentencing Guideline, the Court is Authorizes to reduces a defendant sentence by two (-2) level, as stated in title 18 U.S.C. § 3582 (c)(2), after considering the factors set forth in section 18 U.S.C. § 3553(a)

### CONCLUSION

Wherefore, Mr. Sanchez respectfully pray that this honorable court re-sentence Mr. Sanchez and modify his term of 168 months imprisonment pursuant to 18 U.S.C. § 3582 (c)(2) through application of amendment, 706, 711, 101, U.S.S.G. § 1B1.10, and 28 U.S.C. § 994 (o) to his current term and re-sentence Mr. Sanchez to the **Low end of the amended guideline range 121 months.**

Respectfully Submitted /s/ Juan Alu Sanchez

17

## CERTIFICATE OF SERVICE / OR MAILING

Case Name: Juan A. Sanchez        V. United States Middle District Court Of Pennsylvania

Case Number: 1:CR-01-090 or 3:CV-07-0510        D.O.B. 3 / 7 / 1968
1:CR-01-00090-001

I, the undersigned, hereby affirmed that on this 16 day of the months Sept of the year 2008 I deposited in the recepticle for the united states mail provided at this institution for inmates, first class pre-paid postage, in a sealed envelope the one (1) Original plus three (3) copies upon his/her respective address to:

(1) ORIGINAL COPIES

(2) COPIES

OFFICE OF THE CLERK
UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA
228 WALNUT STREET
P. O. BOX 983
HARRISBURG, PA 17108

A true and correct copy of the attached document identified as follows

MOTION FOR MODIFICATION OF
TERM OF IMPRISONMENT UNDER
TITLE 18 U.S.C. § 3582 (c)(2)

In accordance with houston v. lack 487 U.S. 266 (1988), these document are deemend filed and served as of this date. Pursuant to 28 U.S.C. 1746 (2), I further declare under the penalty of perjury that the foregoing is correct and true.

_Juan Aly Sanch. G._
Affiant                    18

