TRANSCRIPT OF RULE 2255 HEARING

BEFORE THE HONORABLE WILLIAN W. CALDWELL
UNITED STATES DISTRICT JUDGE

# Exhibit (1)

```
1              IN THE UNITED STATES DISTRICT COURT
         FOR THE MIDDLE DISTRICT OF PENNSYLVANIA
2                     HARRISBURG DIVISION

3    UNITED STATES OF AMERICA,   : CASE NO.
                      Plaintiff  : 1:01-CR-00090
4            vs.                 :
     JUAN A. SANCHEZ,            : Harrisburg, PA
5             Defendant          : 8 September 2004
     . . . . . . . . . . . . . . . . . . . . . . . . .: 9:35 a.m.
6

7            TRANSCRIPT OF RULE 2255 HEARING
       BEFORE THE HONORABLE WILLIAM W. CALDWELL
8              UNITED STATES DISTRICT JUDGE

9    APPEARANCES:

10   For the Plaintiff:

11        Ted Smith, Esq., AUSA
          U.S. Attorney's Office
12        Federal Building, 2nd Floor
          228 Walnut Street
13        Harrisburg, PA 17108
          (717) 221-4482
14

15   For the Defendant:

16        Dennis E. Boyle, Esq.
          Nauman, Smith, Shissler & Hall, L.L.P.
17        200 North Third Street, 18th Floor
          P.O. Box 840
18        Harrisburg, PA 17108-0840
          (717) 236-3010
19

20   Interpreter: Dr. Jose Diaz

21   Court Reporter:

22        Wesley J. Armstrong, RPR
          Official Court Reporter
23        U.S. Courthouse
          228 Walnut Street
24        Harrisburg, PA 17108
          (717) 542-5569
25
```

COPY

1

1    A. I represented him.

2    Q. You represented him on the charges that are

3    before the court in this case?

4    A. More specifically I represented him at the

5    sentencing on the charges.

6    Q. Okay. When exactly did you become involved

7    in the case?

8    A. I'm not sure if I can give you an exact

9    date. The reason is because the vast majority

10    of my file was forwarded at the family's request

11    to an attorney in Jersey City. So I don't have

12    must have of it left. I didn't copy everything

13    that was sent out. They seemed to be in quite a

14    hurry, but I know that we had asked for a

15    continuance of a sentencing that was scheduled

16    for June 24th, 2002. So it would have been

17    somewhere very close to that date.

18    Q. Okay. And at what stage was the proceedings

19    at when you became involved?

20    A. At that point he was ready to be sentenced.

21    Q. Had objections to the presentence report

22    been filed before you entered your appearance?

23    A. If I'm not mistaken they had been. I'm not

24    sure of that. I may have filed them, but I

25    believe Lori Borger had filed them before I got

1    involved.

2        THE COURT: Who is that?

3        THE WITNESS: Your Honor?

4        THE COURT: Who filed the objections?

5        THE WITNESS: Lori Borger -- I'm sorry, Lori

6    Ulrich.  I've known her too long, judge.  She had

7    represented --

8        THE COURT: I'm kidding.

9        THE WITNESS: My apologies.

10        THE COURT: No problem.  Just got to keep

11    the record straight here.

12        THE WITNESS: Yes, sir.

13        MR. BOYLE: Your Honor, I'd like to show the

14    witness a copy of objections.  May I approach?

15        THE COURT: Sure.

16        (Defense Exhibit D-1 marked for

17    identification.)

18      Q. Mr. Welch, I'm handing you what's been

19    marked as Exhibit D-1.  Do you recognize that

20    exhibit?

21      A. Yes, sir.

22      Q. And what is that?

23      A. Those are the objections.

24      Q. And they were filed by Lori Ulrich?

25      A. They were filed by Lori Ulrich.

1    Q. They were pending when you entered your

2    appearance?

3    A. Yes, sir.

4    Q. Now, where did you meet Mr. Sanchez after

5    this first time if you recall?

6    A. I'm not sure.

7    Q. Okay.

8    A. I think the first time I met him, I have to

9    apologize because I had two cases almost at the

10    same time that were very similar, the other one

11    being a guy named Rodney Gonzalez. If I'm not

12    mistaken I met Mr. Sanchez at the Dauphin County

13    Prison just a very few days before the sentencing

14    was scheduled, but I'm not a hundred percent sure

15    of that.

16    Q. Do you recall what you discussed at that

17    time?

18    A. I remember speaking with him. I didn't know

19    much about the case at that point. The family

20    had contacted me and I spoke with them and then

21    went to see him. My first question was what his

22    complaints were with Mrs. Ulrich, because I have

23    known her for so long, I know her to be an

24    excellent attorney, discussed what his complaints

25    were and what exceptions had been taken as far as

7

1    discussed.  I do know that my impression at that

2    time because it carried on throughout this was

3    that the issues that he was taking exception with

4    probably were not going to have any meaningful

5    effect on the guidelines as they were computed,

6    and I also recall that he had a major, major

7    complaint with Christy Fawcett of the U.S.

8    Attorney's Office and with failure to be given

9    all of the points for acceptance of

10    responsibility that he felt he should be given.

11      Q. Did you hire a prior investigator?

12      A. We did.

13      Q. And who was that private investigator?

14      A. Matthew Hunt, H-U-N-T.

15      Q. Now, did you receive any investigative

16    reports from the Federal Public Defenders's

17    office?

18      A. Yes.  Yes, I remember some.  I don't have

19    them.  They were forwarded to attorney Garrigan

20    in Jersey City, along with the ones that Mr. Hunt

21    produced.

22        MR. BOYLE: Your Honor, may I approach the

23    witness?

24        THE COURT: Just a second.

25        THE INTERPRETER: I can't hear him.

1    THE COURT: I can't understand what he's

2  saying.

3    THE WITNESS: I think he's trying to get me

4  to speak up.

5    THE INTERPRETER: I'm sorry, I apologize.

6    MR. BOYLE: Your Honor, may I approach the

7  witness?

8    THE COURT: Sure.  You don't have to ask

9  permission to do that again, not with your

10  exhibits.  If you have more than one that you're

11  going to confront him with, why don't you just

12  give him all of them.

13    MR. BOYLE: Okay.

14    (Defense Exhibits D-2 and D-3 marked for

15  identification.)

16  Q.  Mr. Welch, I'm handing you what's been

17  marked as Defense Exhibits 2 and 3.  Could you

18  look at Defense Exhibit 2, please?

19    MR. SMITH: Which is 2 and which is 3?

20    MR. BOYLE: 2 would be the Betty Deck

21  statement, and 3 is the Phillip Parbel.

22    THE COURT: Okay.  Do you have a question?

23    BY MR. BOYLE:

24  Q.  Yes.  Do you recognize those statements?

25  A.  Yes.

1    when or where.  Certainly I went over them with

2    him.

3      Q. Okay.  Now, when you appeared at the

4    sentencing hearing, did you withdraw the

5    objections in this case?

6      A. When we appeared at the sentencing hearing -

7    I had Parbel and Deck present under subpoena.

8    I had, I believe Matthew Hunt was here also.  We

9    went into a conference.  My recollection is that

10   the judge suggested that we might want to confer

11   before we actually got into this hearing, Judge

12   Caldwell often does that, recognizing that

13   there's a risk in litigation.

14     Q. So the record is clear, when you say "we,"

15   could you please identify who that is?

16     A. Christy Fawcett and myself.  The assistant

17   U.S. attorney was handling the case and we went

18   into conference.  We discussed the matter fifteen

19   or twenty minutes I suspect.  She was willing

20   to bend on the points for acceptance of

21   responsibility.  I came back and sat right where

22   you're sitting, discussed it with Mr. Sanchez.

23   He indicated that -- I explained to him that

24   there was a risk, but it was conceivable that the

25   judge could conclude that he wasn't entitled to

12

1    any points, as well as the possibility that he

2    could be entitled to all the points, but I didn't

3    see any other exception that was going to get him

4    any relief and indicated that if he wanted to

5    take the one extra point, it would save him I'

6    think it was about a year under the guidelines.

7    I had the guidelines with me and we looked at

8    them.   He indicated that that was acceptable to

9    him.   That decision made, we obviously withdrew

10    the exceptions, or the objections, and proceeded

11    to sentencing, and I believe that was reflected

12    in the colloquy at that time.

13    Q.  Did, now during the colloquy Mr. Sanchez

14    indicated at one point in time he didn't want

15    to upset the judge.  Do you recall that?

16    A.  I have some recollection of language to

17    that effect, yes, sir.

18    Q.  Why did he say that if you know?

19    A.  I suspect that he had a certain fear that if

20    he were to continue through to a hearing, that

21    the judge might be aggravated by the fact he went

22    through with a hearing.   That's the only thing I

23    can conclude.

24    Q.  Did you tell him that the judge might be

25    aggravated if you went through with the hearing?

1    A. I don't think I ever told him that. I

2    think I did tell him that if he, as I do with

3    everybody, that if any judge feels that an issue

4    that's been placed before the court is entirely

5    frivolous that certainly a judge is capable of

6    determining within their discretion that any

7    leeway that they could give a person they may

8    not want to give. I view that as being closely

9    related to acceptance of responsibility.

10    Q. Now, the presentence report identifies two

11    cooperating witnesses in the relevant conduct

12    section of the report. Do you recall that?

13    A. I believe you're referring to Deck and

14    Parbel. I don't really recall the presentence,

15    no.

16    Q. Other than Deck and Parbel, did the

17    government have any witnesses available to

18    testify to your knowledge on that day?

19    A. Deck and Parbel if I'm not mistaken were

20    there under my subpoena. I don't know if they

21    were here under a government subpoena as well.

22    They were other people in the courtroom.

23    Q. Okay. Do you know who they were?

24    A. If I'm not mistaken Mr. Sanchez was asked

25    and identified them for me, but I don't recall

1    Costopoulos & Welch?

2      A. That's correct.  The company, yes.

3      Q. Are you familiar with the presentence report

4    in this case?

5      A. Yes.

6      Q. Did you receive a copy of the presentence

7    report?

8      A. Yes.

9      Q. Do you recall when you received a copy of

10   the report?

11     A. About six months after the sentence I think.

12     Q. After the sentencing?

13     A. No, after I pled guilty.

14     Q. Okay.  Did you receive it before you were

15   sentenced?

16     A. Yes.  Presentence report, yes.  Presentence

17   report, yes.

18         MR. BOYLE: Your Honor, I believe the

19   presentence report is already a matter of

20   record in this case.  It doesn't have to be

21   reintroduced.

22         MR. SMITH: I'll agree.

23         BY MR. BOYLE:

24     Q. Mr. Sanchez, I'm handing you a copy of the

25   presentence report in this case.  When did you



1   first review this document with Mr. Welch, if

2   ever?

3      A. After I had paid him, and after the court

4   had accepted him as my attorney.

5      Q. Okay.  Where did he meet you at?

6      A. I was in prison in Cumberland County.

7      Q. And please explain how he went over the

8   presentence report with you.

9      A. I explained to him all the objections what

10   they had done and that I was not guilty of all

11   the things they had invented, and that's why I

12   had made a contract, hired him to defend me to

13   go through all these things.

14      Q. Had Ms. Ulrich already filed objections at

15   that time?

16      A. No.  She did only one section of it, not

17   the whole thing.

18      Q. But she did file objections?

19      A. Yes, yes.

20      Q. Okay.  Did you discuss those objections

21   with Mr. Welch?

22      A. That's why I hired him, yes.

23      Q. What happened when you went to court?

24      A. When we came to the court here he turned

25   against me.  When I came into the court he was

1    in that room.

2         THE INTERPRETER: He's pointing to the right

3    side of the courtroom.

4      A.  When he came out of there he came out with

5    the U.S. attorney.  He told me he had spoken with

6    the U.S. attorney, that we had five minutes for

7    an audience to review these, that the U.S.

8    attorney had argued or talked over one point,

9    if I wanted to give up some of the objections

10   because the trial would last about three hours,

11   and that the judge would be unhappy about

12   carrying on with that hearing.

13        Then he told me to think about this point,

14   that I had five minutes to think about it at that

15   point, and I told him that at that point they

16   were bringing up was one of my objections and I

17   had already pointed it out to him, and that was

18   one of my points and I wasn't going to argue that

19   point and negotiate that point, and Phillip

20   Parbel and Larry Deck were here, and I told him

21   how can we, how could I come to agreement for

22   four points, to exchange four points for only one

23   point when he knew that I had hired him so that

24   he would fight all the objections.

25     Q.  If I may interrupt, did you at some point

1    sixty days extension because two more witnesses

2    who were to come and he was going to, so he could

3    fight further the case, my case, because he had

4    taken some vacation, because he told me then that

5    right now at that point since he had done nothing

6    that anything that would happen in the court that

7    he was going to appeal for over the first

8    presentence report, but as I did not contract,

9    did not hire him to appeal my case, and so I gave

10   him all the papers that he had enough arguments

11   to appeal.  When I gave him all the papers that

12   day he said there are many objections.  That's

13   why he needed the time.  He didn't want the judge

14   to sentence me then, and if he were to sentence

15   me he was going to appeal.

16       Q. Did you file an appeal or did you discuss

17   appeal after that at all with Mr. Welch?

18       A. When we were discussing that point he told

19   me not to worry, that it was the judge's decision

20   because I had exchanged the indictment for the

21   information, and there were at least five years

22   just for that.  And if the judge did not give me

23   the five years, he was going to appeal to

24   consider that point to see what the judge was

25   going to say.

1    information that had actually been provided by

2    the defendant concerning the quantity of cocaine

3    that the defendant had sold to them.

4        **Q.** What if any admissions had the defendant

5    made that were in your possession that could have

6    been used to corroborate the drug quantities?

7        **A.** The defendant made a number of admissions

8    concerning drug, his involvement in drug

9    trafficking with respect specifically to Robert

10   and Betty Deck and Phillip Parbel.  He admitted

11   at the time of his second arrest that he had sold

12   drugs and that just prior to the execution of a

13   search warrant, which was the matter under when

14   he was arrested, he had delivered fifty grams to

15   Robert and Betty Deck and Phillip Parbel.

16       **Q.** And as you prepared to go into this

17   sentencing hearing did you make Mr. Welch,

18   counsel for the defendant, aware of your

19   preparedness to go through with the hearing?

20       **A.** Yes.  I had told him that the Parbels and

21   Mr. Deck were in the courtroom.  Actually I

22   recall that they were seated in the back of the

23   courtroom on the left-hand side as I'm faced, and

24   I think I even pointed them out to Mr. Welch.

25       **Q.** How did the objection previously filed by

35

1    prior counsel come to be withdrawn?

2    A. There was a discussion between myself and

3    Mr. Welch concerning the fact that I had

4    witnesses prepared to testify concerning the

5    drug weights, and I proposed to him or he

6    proposed to me, I can't remember who made the

7    initial proposal, that there be a compromise so

8    that the witnesses would not testify concerning

9    the drug weights, and the compromise was that I

10   would recommend to the court that he receive a

11   third point, or point off his offense level score

12   for acceptance of responsibility.

13   Q. Did you believe he was entitled to that

14   legally?

15   A. No, because he had, normally that third

16   point is credited to a defendant if the defendant

17   timely admits his guilt and the government is not

18   required to go through the expense and the work

19   of preparing for trial. In this case that hadn't

20   happened. The defendant was scheduled for trial

21   on a Monday. On the Friday before that Monday,

22   just three days before that Monday, I received a

23   call from his defense attorney, at the time Lori

24   Ulrich, saying he wanted to plead guilty. So his

25   express desire to plead guilty wasn't presented

3 6

1   to me until shortly before the trial.

2   Q. And you had prepared considerably for trial?

3   A. Yes.

4   MR. SMITH: I believe those are the only

5   questions I have.

6   THE COURT: All right. Mr. Boyle?

7   CROSS EXAMINATION BY MR. BOYLE:

8   Q. During your negotiations with Mr. Welch was

9   Juan Sanchez present?

10   A. I don't specifically recall. I believe

11   that we had some of these negotiations in the

12   courtroom with the defendant present but the

13   court not here yet. So whether he was

14   specifically standing with Mr. Welch I don't

15   recall.

16   Q. You don't recall who participated in the

17   negotiations?

18   A. No, but I know that Mr. Welch discussed with

19   him, meaning whether or not he would accept this

20   compromise.

21   Q. And how do you know that?

22   A. Because I recall Mr. Welch saying he would

23   accept a compromise.

24   MR. BOYLE: Okay.

25   THE COURT: Did these discussions take place

37

1    across a situation where any judge of this court

2    or any other federal court has sentenced outside

3    the guideline range.  So if there was a mention,

4    it was a very brief mention.  So it's essentially

5    a non-issue.  And certainly if a sentence had

6    been imposed outside the guideline range we would

7    have revisited the issue of appeal and done that

8    immediately.

9       Q. Okay.  Did you discuss the possibility of

10   appealing the guideline calculations themselves?

11      A. We had to have discussed it to some degree

12   because of the guideline calculation that was at

13   issue.  So I can't imagine how I possibly could

14   have discussed it with him without explaining it

15   to him that if there was, if we felt the court's

16   application of the guideline was inappropriate

17   that there would be a basis to appeal for that.

18      Q. And you would agree that there would be a

19   basis to appeal that issue?

20      A. Sure.  To appeal.   It doesn't necessarily

21   means there's a basis to win.

22      MR. BOYLE: Well, I understand that.

23   I have no further questions, Your Honor.

24      MR. SMITH: And I have none.

25      THE COURT: Thank you, Mr. Welch.

**OBJECTIONS**
**TO THE PRESENTENCE REPORT**

# Exhibit (2)

# FEDERAL PUBLIC DEFENDER

MIDDLE DISTRICT OF PENNSYLVANIA
100 CHESTNUT STREET, SUITE 306
HARRISBURG, PENNSYLVANIA 17101-2540
TELEPHONE: (717) 782-2237
FAX (717) 782-3881

FEDERAL PUBLIC DEFENDER
JAMES V. WADE

ASSISTANT FEDERAL DEFENDERS
DANIEL I. SIEGEL
LORI J. ULRICH
THOMAS A. THORNTON

February 21, 2002

Lori A. Baker
United States Probation Officer
Federal Building, Room 720
228 Walnut Street
Harrisburg, PA  17108

     **RE:**   *United States v. Juan Sanchez*
           *Criminal No. 1:01-CR-00090*

Dear Lori:

    I have reviewed the presentence report with Mr. Sanchez and we have several objections.

    <u>Paragraph 8</u>. Mr. Sanchez denies that he had any conversations about killing a confidential informant and denies any involvement in such conduct.

    <u>Paragraph 10</u>. Mr. Sanchez denies that he ever gave an informant a .25 caliber semi-automatic handgun with a laser sight. Furthermore, he denies ever possessing such a firearm.

    <u>Paragraph 14</u>. Mr. Sanchez denies selling cocaine to Betty Deck for two years and denies selling 30 grams weekly to Phillip Parbel. He also denies delivering 80 grams on two separate occasions to Betty Deck and Mr. Parbel.

    <u>Paragraph 15</u>. Mr. Sanchez denies selling cocaine to Phillip Parbel for two and a half years.

    <u>Paragraph 17</u>. Mr. Sanchez denies that he had a leadership role in the offense with respect to Juan Luis Rodriguez-Cruz, Elizabeth Giron, Ruddy Antonio Tapia-Sarante, and Janira Flores. Juan Sanchez denies that Janira Flores collected payments for him for cocaine delivered to Betty Deck.

    <u>Paragraph 19</u>. Mr. Sanchez denies approaching any individuals to have the first confidential informant murdered. The statements made to the agents while in transit following his arrest were merely expressions of frustration over the preceding events.

*United States v. Juan A. Sanchez*
*Criminal No. 1:01-CR-00090*
*PSR Objections*
*February 21, 2002*
*Page 2*

    Paragraph 23. Mr. Sanchez disagrees with the drug quantity calculations. Specifically, he disagrees with the historical data provided by Phillip Parbel and Betty Deck. Mr. Sanchez is alleging that Mr. Parbel and Ms. Deck are not credible witnesses.

    Paragraph 24. Mr. Sanchez objects to a two-level enhancement for possession of a firearm.

    Paragraph 25. Mr. Sanchez objects to a two-level enhancement for a leadership role in the offense.

    Paragraph 72. Mr. Sanchez objects to a guideline range of 188-235 months.

    We are requesting a hearing on these matters. If you have any questions, please contact me at the Federal Public Defender's Office.

Sincerely,

Lori J. Ulrich
Asst. Federal Public Defender

LJU/saj
cc:    Christy H. Fawcett, Esquire
       Juan Sanchez

**ADDENDUM TO THE PRESENTENCE REPORT**

United States District Court For The Middle District of Pennsylvania
United States v. Juan A. Sanchez, Dkt. No. 1:CR-01-090

## OBJECTIONS

### By the Government

The Government has no unresolved objections.

### By the Defendant

As reflected in the attached correspondence, the defendant has numerous objections to the presentence report, which do affect the guideline calculations, and are summarized as follows:

> Offense Conduct and Offense Level Computation - The objections submitted by defense counsel reflect that Mr. Sanchez denies much of the conduct attributed to him by the Assistant U.S. Attorney. As a result, counsel objects to the drug calculations and the enhancements for possession of a firearm, leadership role, and obstruction of justice. Counsel is requesting a hearing on these matters.

The probation officer stands by the presentence report, noting that all of the information concerning the offense objected to by the defendant and counsel was provided by the Government.

Should the Court find for the defendant, the guideline range will be recalculated based on the Court's findings.

CERTIFIED BY:

*Lon A Baker*

Lori A. Baker
U.S. Probation Officer


Approved:

*Edward J Kosheba    7/27/07*
Edward J. Kosheba          Date
Deputy Chief U.S. Probation Officer

# UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA
PROBATION OFFICE

## HARRISBURG

JOSEPH P. DONOHUE
CHIEF PROBATION OFFICER

WILLIAM J. NEALON U.S. COURTHOUSE
P.O. BOX 191
SCRANTON 18501-0191
570/207-5840

240 W. 3RD ST, STE 114
WILLIAMSPORT 17701
570-323-3688

P.O. BOX 805
HARRISBURG 17108-0805
717-901-2840

ROOM 201
197 S. MAIN STREET
WILKES-BARRE 18701-1500
570-826-6257

February 22, 2002

MEMORANDUM TO: Juan A. Sanchez
Defendant

Lori J. Ulrich
Defense Counsel

Christy Fawcett
Assistant U.S. Attorney

SUBJECT:     **SANCHEZ, Juan A.**
Dkt. No. 1:CR-01-090

### MODIFICATIONS TO PRESENTENCE REPORT

I am submitting a revised presentence report and an addendum on the subject. The parties are asked to note the following changes:

1. Paragraphs 23 and 28 (Base Offense Level – Group One) and Paragraphs 35, 38, and 40 (Multiple Count Adjustment) - have been revised based on new drug calculations which result in a lower offense level;

2. Paragraph 42 (Adjustment for Acceptance of Responsibility) - the additional one-level reduction for timely notification of intention to enter a guilty plea has been removed based on information provided by the Government;

3. Paragraph 44 (Total Offense Level) - has been corrected based on the above changes to thirty-four;

4. Paragraph 55 (Other Arrests) - the disposition of this charge is now included; and

5. Paragraphs 72 and 81 (Sentencing Options) - now reflect a guideline imprisonment range of 168 to 210 months and a fine range of $17,500 to $175,000.

Sincerely,

Lori A. Baker
U.S. Probation Officer

LAB/wlh
Attachment
cc:  Joseph P. Donohue
     Chief U.S. Probation Officer

# UNITED STATES DISTRICT COURT
### MIDDLE DISTRICT OF PENNSYLVANIA
### PROBATION OFFICE

### **HARRISBURG**

JOSEPH P. DONOHUE
CHIEF PROBATION OFFICER

WILLIAM J. NEALON U.S. COURTHOUSE
P.O. BOX 191
SCRANTON 18501-0191
570/207-5840

240 W. 3RD ST. STE 114
WILLIAMSPORT 17701
570-323-3688

P.O. BOX 805
HARRISBURG 17108-0805
717-901-2860

ROOM 201
197 S. MAIN STREET
WILKES-BARRE 18701-1500
570-826-6257

February 22, 2002

MEMORANDUM TO:    The Honorable William W. Caldwell
                  U.S. District Judge

SUBJECT:          **SANCHEZ, Juan A.**
                  Dkt. No. 1:CR-01-090

I am submitting a Revised Presentence Report with an Addendum on the subject.

The initial report has been reviewed by the parties. I am herewith forwarding a copy of the Addendum to the defendant, defense counsel, and counsel for the Government.

Respectfully submitted,

Lori A. Baker
U.S. Probation Officer

LAB/wlh
Attachments
cc:  Juan A. Sanchez, Defendant
     Lori J. Ulrich, Defense Counsel
     Christy Fawcett, Assistant U.S. Attorney
     Joseph P. Donohue, CUSPO

ORDER

PETITIONER'S 2255 MOTION ( DOCS. 48 AND 76 ) IS DENIED

# Exhibit (3)

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA,          :
     Plaintiff
                              :

     vs.                :   CRIMINAL NO.  1:CR-01-90
                              :   CIVIL NO. 1:CV-03-1400
                              :

JUAN A. SANCHEZ,
     Defendant                :

## O R D E R

AND NOW, this 3rd day of December, 2004, it is Ordered

that:

    1. Petitioner's 2255 motion (Docs. 48 and
67) is denied.

    2. Based on the accompanying memorandum,
a certificate of appealability is denied.

    3. The Clerk of Court shall close this
file.

                      /s/William W. Caldwell
                     William W. Caldwell
                     United States District Judge

It is clear that the Defendant received a sentence
within the range indicated at the time of his plea.   Further,
the Defendant withdrew his objections to the pre-sentence report
in order to receive the benefit of an additional point for
acceptance of responsibility.   Although the Defendant raises
*Blakely* as a potential issue for appeal, that case was decided
almost two years after Sanchez was sentenced and counsel could
not have raised a *Blakely* claim on appeal.   Finally, we have
already determined that the Defendant did not indicate to
counsel that he desired an appeal.   Considering all of these
factors together, it cannot be said that either a rational
defendant would want to appeal or that the Defendant indicated
his own desire to appeal.   Therefore, counsel was not deficient
in his representation and the Defendant's claim of ineffective
assistance for failure to appeal must fail.

    2.    Sentencing outside the guideline range

    The Defendant argues that counsel was ineffective at
sentencing because he allowed the court to impose a sentence
using U.S.S.G. § 2D1.1, the guideline section for drug offenses.
He maintains that because he did not plead guilty to 21 U.S.C. §
846 or 21 U.S.C. § 841, § 2D1.1 cannot be used to calculate the

9

base offense level for his sentence on Counts I and II.[4]  The Government argues that the base offense level for Counts I and II was calculated correctly.

Upon a review of the sentencing guidelines applicable at the time the Defendant was sentenced, it is clear that § 2D1.1 applies to the Defendant's sentence.  U.S.S.G § 2X1.1(a), the guideline section for 18 U.S.C. § 371, requires, for the calculation of a base offense level, the use of the base offense level for the underlying substantive offense.  The guideline section for 18 U.S.C. § 1952, U.S.S.G. § 2E1.1(a)(2), also requires the use of the offense level applicable to the underlying unlawful activity for which "the travel or transportation was undertaken."  The underlying offense for Counts I and II is a drug offense.  Thus, U.S.S.G. § 2D1.1 is the proper section for the calculation of the base offense level for those Counts and counsel did not allow the court to sentence the defendant outside his charged offense.  Defendant's ineffectiveness claim will be denied.

---

[4] Although the Defendant objects to the use of § 2D1.1 to enhance his sentence under 18 U.S.C. § 1028, we construe his claim as an objection to the use if § 2D1.1 with regard to Counts I and II.  § 2D1.1 was applied to those Counts and not to Count III.

PLEA AGREEMENT

# Exhibit (4)

UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

FILED
HARRISBURG

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| v. | ) |
| | ) |
| JUAN A. SANCHEZ, A/K/A | ) |
| JIMMY HERNANDEZ, A/K/A | ) |
| JAIME HERNANDEZ, A/K/A | ) |
| JOSE VERIS, A/K/A | ) |
| JOSE VERAS, A/K/A | ) |
| NINO, A/K/A | ) |
| ALEX | ) |

CRIMINAL NO. 1:CR-01-090

(Judge Caldwell)

_____
Deputy Clerk

## P L E A   A G R E E M E N T

The following plea agreement is entered into by and between
the United States Attorney for the Middle District of
Pennsylvania and the above-captioned defendant.  Any reference to
the United States or to the Government in this Agreement shall
mean the office of the  United States Attorney for the Middle
District of Pennsylvania.

The defendant, as well as counsel for both parties,
understand that the United States Sentencing Commission
Guidelines which took effect on November 1, 1987, as amended,
will apply to the offenses to which the defendant is pleading
guilty, since those offenses were completed after the effective
date of the implementation of the Guidelines.

1.  The defendant agrees to waive indictment by a grand jury
and plead guilty to a felony information which will be filed
against the defendant by the United States Attorney for the

Middle District of Pennsylvania.  That information will charge the defendant with a violation of Title 18, United States Code, Section 371, criminal conspiracy to cause interstate and foreign travel in aid of drug distribution.  The maximum penalty for that offense is imprisonment for a period of five (5) years, a fine of $250,000, a term of supervised release to be determined by the court, the costs of prosecution, denial of certain federal benefits as well as an assessment in the amount of $100.  The information will also charge the defendant with a violation of Title 18, United States Code, Section 1952, causing interstate and foreign travel in aid of drug distribution.  The maximum penalty for that offense is imprisonment for a period of five (5) years, a fine of $250,000, a term of supervised release to be determined by the court, the costs of prosecution, denial of certain federal benefits as well as an assessment in the amount of $100.  The information will also charge the defendant with a violation of Title 18, United States Code, Section 1028(a)(1), production of false identification.  The maximum penalty for that offense is imprisonment for a period of fifteen (15) years, a fine of $250,000, a term of supervised release to be determined by the court, the costs of prosecution, denial of certain federal benefits as well as an assessment in the amount of $100.  At the time the guilty plea is entered, the defendant shall admit to the Court that the defendant is, in fact, guilty of the offenses

2

charged in the information.   In the event that the defendant

subsequently successfully vacates or sets aside any plea,

conviction or sentence imposed pursuant to this plea agreement,

the defendant further agrees to waive any defense to the filing

of additional charges which could have been brought against the

defendant at the time of this plea based upon laches, the

assertion of any speedy trial rights, any applicable statute of

limitations, or any other grounds.

  2.   The defendant also understands that the court must

impose at least a three-year term of supervised release in

addition to any term of imprisonment, fine or assessment

involving a violation of the Controlled Substances Act.

  3.   The defendant also understands that the Court must

impose a term of supervised release following any sentence of

imprisonment exceeding one (1) year, or when required by statute.

The Court may require a term of supervised release in any other

case.

  4.   At the time of sentencing on the information described

above, the United States agrees to move for dismissal of the

indictment filed under Criminal Number 1:CR-01-090.   The

defendant agrees, however, that the United States may at its sole

election reinstate any dismissed counts in the event that the

charge(s) to which the defendant has pleaded guilty pursuant to

this plea agreement are subsequently vacated or set aside by the

3

agrees that if the government receives information that the
defendant has committed new crimes while awaiting plea and /or
sentencing in this case, the government may petition the Court
and, if the Court finds by a preponderance of the evidence that
the defendant has committed any other criminal offense while
awaiting plea or sentencing, the Government shall be free at its
sole election to either: A) withdraw from this agreement, or B)
make any sentencing recommendations to the Court that it deems
appropriate. The defendant further understands and agrees that,
if the Court finds that the defendant has committed any other
offense while awaiting plea or sentencing,  the defendant will
not be permitted to withdraw any guilty pleas tendered pursuant
to this plea agreement, and the government will be permitted to
bring any additional charges which it may have against the
defendant.

    29.  The United States is entering into this Plea Agreement
with the defendant because this disposition of the matter fairly
and adequately addresses the gravity of the series of offenses
from which the charges are drawn, as well as the defendant's role
in such offenses, thereby serving the ends of justice.

    30.  This document states the complete and only Plea
agreement between the United States Attorney for the Middle
District of Pennsylvania and the defendant in this case, and is
binding only on the parties to this agreement, supersedes all

prior understandings, if any, whether written or oral, and cannot be modified other than in writing that is signed by all parties or on the record in Court. No other promises or inducements have been or will be made to the defendant in connection with this case, nor have any predictions or threats been made in connection with this plea.

31. The original of this agreement must be signed by the defendant and defense counsel and received by the United States Attorney's Office on or before 5:00 p.m., Friday, June 22, 2001, otherwise the offer shall be deemed withdrawn.

32. None of the terms of this agreement shall be binding on the Office of the United States Attorney for the Middle District of Pennsylvania until signed by the defendant and defense counsel and until signed by the United States Attorney.

14

## ACKNOWLEDGMENTS

I have read this agreement and carefully reviewed every part of it with my attorney.  I fully understand it and I voluntarily agree to it.


_6 - 1 9 - 01_
Date

_Juan Alex Sanchez_
JUAN A. SANCHEZ
Defendant

I am the defendant's counsel.  I have carefully reviewed every part of this agreement with the defendant. To my knowledge my client's decision to enter into this agreement is an informed and voluntary one.


_6/19/01_
Date

_Lori Ulrich_
LORI ULRICH, ESQUIRE
Counsel for Defendant


_6-19-01_
Date

_Martin C. Carlson_
MARTIN C. CARLSON
United States Attorney

CHF:pak
(2001R00207 ~ 6/14/01)

15

SUBPOENA

PRIVATE INVESTIGATOR   MATTHEW E. HUNT

PHILLY PARBEL,

BETTY DECK,

# Exhibit (5)

AO 89 (Rev. 11/91) Subpoena in a Criminal Case

## PROOF OF SERVICE

| | DATE | PLACE Shepherd's Fold, 1920 Quarry Road, Lebanon, PA 17046 |
|---|---|---|
| RECEIVED BY SERVER | | |
| SERVED | DATE 2:00 PM June 20, 2002 | PLACE Shepherd's Fold, 1920 Quarry Road Lebanon, PA 17046 |

| SERVED ON (PRINT NAME) | FEES AND MILEAGE TENDERED TO WITNESS |
|---|---|
| Phillip Parbel | ☐ YES ☒ NO     AMOUNT $_____ |

| SERVED BY (PRINT NAME) | TITLE |
|---|---|
| Matthew E. Hunt | Private Investigator |

### DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on _June 20, 2002_
                    Date

_Matthew E. Hunt_
Signature of Server

_2281 Forest Hills Drive_
Address of Server

_Harrisburg, PA 17112-1035_

**ADDITIONAL INFORMATION**

Advised Phillip Parbel to call attorney Allen Welch's office at 717-221-0900 on Monday, June 24, 2002 to ascertain if a continuance has been granted for the scheduled trial.

AO 89 (Rev. 11/91) Subpoena in a Criminal Case

## PROOF OF SERVICE

| | DATE | PLACE |
|---|---|---|
| RECEIVED BY SERVER | | |
| SERVED | DATE 3:30 PM JUNE 20, 2002 | PLACE WON'S WEAR, Lehman ST. + LINCOLN Ave, City of Lebanon, PA. |

| SERVED ON (PRINT NAME) | FEES AND MILEAGE TENDERED TO WITNESS |
|---|---|
| BETTY DECK | ☐ YES ☒ NO    AMOUNT $_____ |

| SERVED BY (PRINT NAME) | TITLE |
|---|---|
| Matthew E. Hunt, | PRIVATE INVESTIGATOR |

### DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on _____
Date

Matthew E. Hunt
Signature of Server

2281 FOREST HILLS DRIVE
Address of Server

HARRISBURG, PA. 17112-1035

ADDITIONAL INFORMATION

Advised Betty DECK to call attorney Allen WELCH's office at 717-221-0900 on Monday, June 24, 2002 to ascertain if a continuance has been granted for the scheduled trial

AO 89 (Rev. 11/91) Subpoena in a Criminal Case

## PROOF OF SERVICE

| | DATE | PLACE |
|---|---|---|
| RECEIVED BY SERVER | | |
| SERVED | DATE 11;15 AM 7/12/2002 | PLACE 223 W. MAIN St. MEYERSTOWN PA. |

| SERVED ON (PRINT NAME) | FEES AND MILEAGE TENDERED TO WITNESS |
|---|---|
| BETTY DECK | ☐ YES ☒ NO    AMOUNT $_____ |

| SERVED BY (PRINT NAME) | TITLE |
|---|---|
| Matthew E. Hunt | PRIVATE INVESTIGATOR |

### DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on _July 12, 2002_    _Matthew E. Hunt_
          Date                  Signature of Server

               2281 FOREST HILLS DRIVE
               Address of Server
               HARRISBURG, PA. 17112-1035

ADDITIONAL INFORMATION

Directions to Federal Court House in Harrisburg, Pa. furnished to Betty DECK at time of service.

AO 89 (Rev. 11/91) Subpoena in a Criminal Case

## PROOF OF SERVICE

| | DATE | PLACE Shepherd's Fold, 1920 Quarry Road, Lebanon, PA 17046 |
|---|---|---|
| RECEIVED BY SERVER | | |
| SERVED | DATE 2:00 PM June 20, 2002 | PLACE Shepherd's Fold, 1920 Quarry Road Lebanon, PA. 17046 |

| SERVED ON (PRINT NAME) | FEES AND MILEAGE TENDERED TO WITNESS |
|---|---|
| Phillip PARBEL | ☐ YES  ☒ NO    AMOUNT $_____ |

| SERVED BY (PRINT NAME) | TITLE |
|---|---|
| Matthew E. Hunt | Private Investigator |

### DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on June 20, 2002          Matthew E. Hunt
                Date                          Signature of Server

2281 Forest Hills Drive
Address of Server

Harrisburg, PA 17112-1035

**ADDITIONAL INFORMATION**

Advised Phillip PARBEL to call Attorney Allen WELCH's office at 717-221-0900 on Monday, June 24, 2002 to ascertain if a continuance has been granted for the scheduled trial.

TRANSCRIPT OF PROCEEDINGS
SENTENCING

# Exhibit (6)

1            IN THE UNITED STATES DISTRICT COURT
          FOR THE MIDDLE DISTRICT OF PENNSYLVANIA
2

UNITED STATES OF AMERICA       :
3
              v.               :    CRIMINAL NO. 1:CR-01-090
4

JUAN A. SANCHEZ,               :
5   a/k/a Jimmy Hernandez,
    a/k/a Jaime Hernandez,      :
6   a/k/a Jose Veris,
    a/k/a Jose Veras,           :
7   a/k/a Nino,
    a/k/a Alex,                 :
8            Defendant

9

10                 TRANSCRIPT OF PROCEEDINGS

11                        SENTENCING

12       Before:  Hon. William W. Caldwell, Senior Judge

13        Date:  July 23, 2002

14       Place:  Courtroom No. 1
                 Federal Building
15               Harrisburg, Pa.

16

17

18   COUNSEL PRESENT:

19       CHRISTY H. FAWCETT, Assistant U.S. Attorney
             For - Government

20
         ALLEN C. WELCH, Esquire
21           For - Defendant

22

23   JASON BROWN, INTERPRETER

24

25                              Monica L. Zamiska, RPR
                                Official Court Reporter

1    with the matters noted by the Court.  His background, his

2    personal history are all contained in there.  I have not

3    determined if there is anything that he would like to say,

4    but certainly I intend to ask him that right now.

5            THE COURT:  All right.  Mr. Sanchez, you also have

6    the opportunity at this time to address the Court on the

7    question of sentencing or to state anything else that you

8    wish to state at this time.  Do you wish to be heard at this

9    point?

10           THE DEFENDANT:  *First of all, I'd like to ask for

11   forgiveness to the United States, and I declare myself guilty

12   of the things that were invented.  And I want, if possible,

13   that you could send me to New Jersey to be close to my

14   family.

15           THE COURT:  Where is your home in New Jersey?

16           THE DEFENDANT:  *Newark.

17           THE COURT:  Newark, and are you able to give me the

18   name of the institution?

19           THE DEFENDANT:  *I don't know.

20           THE COURT:  Okay.  That's fine.

21           THE DEFENDANT:  *I'm very sorry and I ask for

22   forgiveness.

23           THE COURT:  Okay.  Is that all, sir?   Is that all?

24           THE DEFENDANT:  *Yes.

25           THE COURT:  Miss Fawcett, do you have anything you

7

1    would like to say?

2            MS. FAWCETT:  No, Your Honor.

3            THE COURT:  This, of course, as we know, is not the

4    first time that Mr. Sanchez has been in trouble in our

5    courts.  I believe this is a case, if I'm not mistaken, in

6    which Mr. Sanchez was ordered deported following a 1994 drug

7    conviction.  At that time he evaded deportation by changing

8    his name, and I would put him in a fugitive category at that

9    time.  And he continued his involvement in criminal activity,

10   including drug distribution in Lebanon and the Reading areas.

11   After being arrested locally for this conduct, he was

12   released on bail and again returned to drug distribution.  He

13   has demonstrated a disregard for the laws of this country,

14   and it's unfortunate that having been permitted to come here

15   he could not abide by our laws.

16            Based upon these and other factors it is the

17   judgment of the Court that the defendant Juan A. Sanchez

18   be committed to the custody of the Bureau of Prisons to be

19   imprisoned for a term of 168 months.  This term consists of

20   terms of 60 months on each of Counts 1 and 2 and 168 months

21   on Counts 3 -- on Count 3.  These sentences to be served

22   concurrently.

23            We find that the defendant has some ability to pay

24   a fine, and accordingly we order that he pay the United

25   States the sum of $600, consisting of a fine of $100 and a

MOTION TO POSTPONE SENTENCE

AND

MOTION FOR CONTINUANCE

# Exhibit (7)

*Appendix (0)*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA      :      CRIMINAL NO.1:CR-01-090

                       :      (Judge Caldwell)

         v.          :

                       :

JUAN A. SANCHEZ,          :

a/k/a Jimmy Hernandez,      :

a/k/a Jaime Hernandez,      :      **FILED**

a/k/a Jose Veris,           :      HARRISBURG, PA

a/k/a Jose Veras,           :

a/k/a Nino,                  :      JUN 20 2002

a/k/a ALEX                 :      MARY E. D'ANDREA, CLERK

                                          Per _____ Deputy Clerk

## MOTION TO POSTPONE SENTENCE

**AND NOW**, comes the government through Christy H. Fawcett, Assistant U.S. Attorney, and files the within Motion to Postpone Sentence:

1. On June 22, 2001, the defendant in the above captioned case pled guilty.

2. Following entry of his guilty plea, the defendant retained Allen Welch, Esquire, to represent him during the sentencing proceeding.

3. On June 19, 2002, undersigned counsel spoke to Attorney Welch who stated that as yet he has been unable to locate a witness he wishes to call during the sentencing proceeding.

4. Undersigned counsel stated she would concur in a Motion to Postpone Sentence to permit Attorney Welch to locate the witness.

5. Undersigned counsel is filing this motion because Attorney Welch is out-of-town and unable to do so himself.

**WHEREFORE**, it is requested that the Court postpone the

sentencing hearing in the above captioned case for a reasonable period in order to permit defense counsel to further attempt to locate a witness.

Respectfully submitted,

THOMAS A. MARINO
United States Attorney


*Christy N. Fawcett*
CHRISTY H. FAWCETT
Assistant U.S. Attorney

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA    :   CRIMINAL NO. 1:CR-01-090
    :
    v.    :
    :
JUAN A. SANCHEZ,    :
a/k/a Jimmy Hernandez,    :
a/k/a Jaime Hernandez,    :
a/k/a Jose Veris,    :
a/k/a Jose Veras,    :
a/k/a Nino,    :
a/k/a ALEX    :

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that she is an employee in the Office of the United States Attorney for the Middle District of Pennsylvania and is a person of such age and discretion to be competent to serve papers.

That this 20th day of June 2002, she served a copy of the attached

MOTION TO POSTPONE SENTENCE

by placing said copy in a postpaid envelope addressed to the person hereinafter named, at the place and address stated below, which is the last known address, and by depositing said envelope and contents in the United States Mail at Harrisburg, Pennsylvania.

Allen C. Welch, Esquire
Costopoulos & Welch
1400 North Second Street
Harrisburg, PA 17102

Christina L. Garber
Christina L. Garber
Legal Assistant

## UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA     :    CASE NO. CR-01-00090-001

     v.            :

JUAN A. SANCHEZ,         :

         Defendant     :

FILED
HARRISBURG PA
JUN 2 1 2002
MARY E. D'ANDREA, CLERK
Per _____
Deputy Clerk

---

TO THE HONORABLE, WILLIAM W. CALDWELL, SENIOR JUDGE:

AND NOW COMES the Defendant, Juan A. Sanchez, by and through his attorney, Allen C. Welch, Esquire, of Costopoulos and Welch, and files the following Motion for Continuance, respectfully representing as follows:

### <u>MOTION FOR CONTINUANCE</u>

1.     Defendant, Juan A. Sanchez, has pled guilty to conspiracy to cause interstate and foreign travel in aid of drug distribution, causing interstate and foreign travel in aid of drug distribution and producing a false identification.

2.     Defendant is scheduled to appear before This Honorable Court for sentencing on June 24, 2002 at 9:00 p.m.

3.     In anticipation of sentencing, a Presentence Investigation Report was prepared.

4.     Defendant has raised a number of exceptions to the Presentence Investigation Report.

5.     Defendant also intends to call witnesses to support the aforementioned exceptions.

6.    The defense is attempting to serve subpoenas upon these witnesses; however, it is believed some of these witnesses are attempting to avoid being served with said subpoenas.

7.    As a result, the defense requires another continuance in order to effectuate service of the subpoenas to ensure the witnesses will appear at Defendant's sentencing.

8.    Additionally, as the witnesses are proving difficult to locate and to be served, as much advance notice of the date and time of sentencing as the Court can possibly give would aid the defense in compelling their attendance.

9.    To that end, Defendant prays This Honorable Court will continue sentencing in the matter for a period of at least sixty days, and provide as much advance notice of the date and time of sentencing as possible.

10.    Defendant is incarcerated and, therefore, no prejudice will accrue to the government nor any risk to the public by the granting of this motion.

WHEREFORE, Defendant prays this Honorable Court will enter an Order granting the above requested relief.

Respectfully submitted,

Allen C. Welch, Esquire
COSTOPOULOS & WELCH
1400 North Second Street
Harrisburg, Pennsylvania 17102
Telephone: (717) 221-0900
Fax: (717) 221-0904
ATTORNEY FOR DEFENDANT

Date: 6/21/02

UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA      :      CASE NO. CR-01-00090-001

       v.                  :

JUAN A. SANCHEZ,           :
               Defendant      :

---------------------------------------------------------------------

## STATEMENT OF CONCURRENCE

Undersigned counsel hereby represents that he obtained the concurrence of AUSA

Christy H. Fawcett to this motion.

Allen C. Welch, Esquire
COSTOPOULOS & WELCH
1400 North Second Street
Harrisburg, Pennsylvania 17102
Telephone: (717) 221-0900
Fax: (717) 221-0904
ATTORNEY FOR DEFENDANT

Date: _____8/21/02_____

UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA          :          CASE NO. CR-01-00090-001
                                  :
            v.                    :
JUAN A. SANCHEZ,                  :
            Defendant             :
-------------------------------------------------------------------------------

### AFFIDAVIT OF SERVICE

I, Allen C. Welch, Esquire, hereby certify that I am this day serving a copy of the

foregoing document upon the person, and in the manner, indicated below:

Christy H. Fawcett, Esquire
Assistant U.S. Attorney
U.S. Courthouse
Federal Building
228 Walnut Street
Harrisburg, PA 17108

Allen C. Welch, Esquire
COSTOPOULOS & WELCH
1400 North Second Street
Harrisburg, Pennsylvania 17102
Telephone: (717) 221-0900
Fax: (717) 221-0904
ATTORNEY FOR DEFENDANT

Date: 6/31/02

PROGRESS REPORT

FTD FORT DIX FCI

AND

CALIFORNIA CITY CORRECTIONAL CENTER

PROGRESS REPORT

# Exhibit (8)

```
FTDK4           *         PROGRESS REPORT          *      02-20-2007
PAGE                                                       08:56:46
```

RSP OF: FTD FORT DIX FCI           US DEPARTMENT OF JUSTICE BUREAU OF PRISONS
        5756 HARTFORD & POINTVILE RD
        FORT DIX, NJ 08640
        609 723-1100

NAME: SANCHEZ, JUAN A              REGNO: 10616-067 AGE(DOB): 38/03-07-1968

| INMATE REVIEWED/SIGNATURE | DATE | STAFF SIGNATURE |
|---|---|---|
| *Juan alos Sanchs* | 2/20/07 | M. Con |

TYPE OF PROGRESS REPORT:
INITIAL ___ SIH ___ TRIENNIAL ✓ PRE-RELEASE ___ TRANSFER ___ OTHER: _____

PRESENT SECURITY/CUSTODY LEVEL:
   LOW       /IN

OFFENSE/VIOLATOR OFFENSE:
SENTENCE IMPOSED AND TERM OF SUPERVISION:

   T18 USC 371 - CONSPIRACY TO CAUSE INTERSTATE & FOREIGN TRAVEL
   IN AID OF DRUG DISTRIBUTION (COUNT 1S)
      60 MONTHS                    /     3 YEARS

   T18 USC 1952(A)(3) & 2   CAUSING INTERSTATE & FOREIGN TRAVEL
   IN AID OF DRUG DISTRIBUTION (COUNT 2S)
      60 MONTHS                    /     3 YEARS

   T18 USC 1028 - PRODUCING A FALSE IDENTIFICATION (COUNT 3S)
      168 MONTHS                   /     3 YEARS

DATE COMPUTATION BEGAN: 07-23-2002

| DAYS FSGT/WSGT/DGCT: | DAYS GCT OR EGT/SGT: | MONTHS SERVED: |
|---|---|---|
|  |  | + JAIL CREDIT - INOP TIME |
| 0    /0    /0 | 324 | M:    54 D: 29 |
|  |  | + 874    JC - 0      INOP |

| PROJECTED RELEASE DATE: 05-12-2012 | PROJECTED RELEASE METHOD: GCT REL |
|---|---|

DETAINERS/PENDING CHARGES:
NEW JERSEY
       MAINTAINING A FACILITY FOR THE SALE OF STOLEN AUTO PARTS &
       REC'D 7 YEAR SENTENCE 9/11/03 PWITD  IND #S1285-8-97, 460-3-99

CO-DEFENDANTS: (LIST CO-DEFENDANTS, SENTENCE LENGTH AND PAROLE ACTION IF
PAROLABLE)


DISTRIBUTION: ORIGINAL TO INMATE, COPY TO USPO, COPY TO USPC
              CENTRAL FILE - SECTION TWO                    BP-CLASS-3


(INSTRUCTIONS: EXHAUSTIVE RESEARCH IS REQUIRED AND IS TO BE COMPREHENSIVE IN
EACH SECTION.  THIS REPORT IS TO REFLECT AN EVALUATION OF THE INMATE'S PAST

NAME: SANCHEZ, JUAN A          REGNO: 10616-067

STATUS, AN ASSESSMENT OF HIS/HER CURRENT STATUS, AND POTENTIAL FOR FUTURE
PERFORMANCE.)

---------------------- --- INSTITUTIONAL ADJUSTMENT ----------------------------
(A SUMMARY OF INMATE'S PAST AND CURRENT INSTITUTIONAL ADJUSTMENT.
GIVE A BRIEF INTERPRETATION WHEN IT WILL CLARIFY AN UNDERSTANDING OF THE
INMATE'S ADJUSTMENT.)

A.  PROGRAM PLAN: (IDENTIFY PROGRAM PLANS ESTABLISHED AT INITIAL CLASSIFICATION
    AND SUBSEQUENT PROGRAM REVIEWS.)

B.  WORK ASSIGNMENTS: (SENTRY WILL CAPTURE WORK DATA - SUMMARIZE INSTITUTION
WORK HISTORY AND CURRENT ASSIGNMENT(S). SPECIFY DUTIES, HOURS WORKED,
PROMOTIONS, SKILLS, DEGREE OF COMPETENCE, RELATIONSHIP WITH SUPERVISORS AND
CO-WORKERS AND OTHER SIGNIFICANT ASPECTS OF THE INMATE'S ADJUSTMENT TO THE
JOB (E.G., ATTITUDE, PUNCTUALITY, WILLINGNESS TO ACCEPT AND COMPLETE
ASSIGNMENTS, WILLINGNESS TO ACCEPT SUPERVISION.) (SEE PS ON PROGRESS
REPORTS)

| INST | WORK ASSIGNMENT | | START DATE | STOP DATE |
|------|------|------|------|------|
| FTD | EDUC VT E | VT TUTOR - FCI EAST | 10-01-2006 | CURRENT |
| FTD | VT FRAME | VT FRAMING | 08-01-2006 | 10-01-2006 |
| FTD | CARP EAST | CARPENTRY CREW FCI - EAST | 03-20-2006 | 08-01-2006 |
| FTD | VACATION E | VACATION - FCI EAST | 03-13-2006 | 03-20-2006 |
| FTD | CARP EAST | CARPENTRY CREW FCI - EAST | 11-02-2004 | 03-13-2006 |
| FTD | A&O CMP E | A&O COMPLT-PND WRK ASSIGN EAST | 10-06-2004 | 11-02-2004 |
| FTD | A&O WEST | ADMISSION & ORIENTATION - WEST | 10-05-2004 | 10-06-2004 |
| FTD | GM 3 EAST | GENERAL MAINT 3 FCI - EAST | 03-29-2004 | 08-13-2004 |
| FTD | A&O CMP E | A&O COMPLT-PND WRK ASSIGN EAST | 02-25-2004 | 03-29-2004 |

C.  EDUCATIONAL/VOCATIONAL PARTICIPATION: (SENTRY WILL CAPTURE EDUCATION DATA -
SUMMARIZE INSTITUTION HISTORY AND ACCOMPLISHMENTS. SPECIFICALLY ADDRESS
THE INMATE'S ACADEMIC STRENGTHS AND WEAKNESSES. FOR VOCATIONAL
PARTICIPATION, IDENTIFY SPECIFIC SKILLS LEARNED AND DEGREE OF COMPETENCE,
RELATIONSHIP WITH INSTRUCTORS AND OTHER STUDENTS, AND OTHER SIGNIFICANT
ASPECTS OF THE INMATE'S PARTICIPATION IN TRAINING E.G., ATTITUDE
PUNCTUALITY, WILLINGNESS TO ACCEPT AND COMPLETE ASSIGNMENTS, WILLINGNESS TO
ACCEPT INTRUCTIONS.) (SEE THE PS ON PROGRESS REPORTS)

---------------------- EDUCATION INFORMATION ----------------------------
| FACL | ASSIGNMENT | DESCRIPTION | START DATE/TIME | STOP DATE/TIME |
|------|------|------|------|------|
| FTD | ESL HAS | ENGLISH PROFICIENT | 09-05-2002 1658 | CURRENT |
| FTD | GED XN | EXEMPT GED NON-PROMOTABLE | 09-23-2002 1132 | CURRENT |

------------------------- EDUCATION COURSES ----------------------------
| SUB-FACL | DESCRIPTION | START DATE | STOP DATE | EVNT AC LV | HRS |
|------|------|------|------|------|------|
| FTD | ACE CONV FRENCH RM 220 MONDAY | 02-05-2007 | CURRENT | | |

------------------------- HIGH TEST SCORES ----------------------------
| TEST | SUBTEST | SCORE | TEST DATE | TEST FACL | FORM | STATE |
|------|------|------|------|------|------|------|
| SABE/2 | MATH COMP | 5.0 | 09-13-2002 | OTV | | |
| | MATH CONC | 2.7 | 09-13-2002 | OTV | | |
| | READ COMP | 1.9 | 09-13-2002 | OTV | | |
| | VOCABULARY | 7.4 | 09-13-2002 | OTV | | |

D.  COUNSELING PROGRAMS: (SUMMARIZE INSTITUTION COUNSELING HISTORY AND IDENTIFY
    CURRENT PARTICIPATION IN COUNSELING PROGRAMS INCLUDING PROGRAM DESCRIPTION,

NAME:  SANCHEZ, JUAN A                REGNO: 10616-067

HOURS COMPLETED, LEVEL OF PARTICIPATION, AND BENEFIT DERIVED.)

E.  INCIDENT REPORTS: (SENTRY WILL CAPTURE INCIDENT REPORTS.  FOR PROHIBITED
ACTS OF GREATEST SEVERITY, INCLUDE A BRIEF ACCOUNT OF THE INCIDENT.)

    NO DISCIPLINARY INFRACTIONS INCURRED DURING THIS REPORTING TIME.

F.  INSTITUTIONAL MOVEMENT: (SENTRY WILL CAPTURE INMATE MOVEMENT)

| INSTITUTION | ASSIGNMENT | REASON FOR MOVEMENT | EFFECTIVE DATE |
|---|---|---|---|
| FTD GP | A-DES | WRIT RETURN | 10-05-2004 |

G.  PHYSICAL AND MENTAL HEALTH: (INDICATE ANY SIGNIFICANT MENTAL OR PHYSICAL
HEALTH PROBLEMS.  INCLUDE EMPLOYABILITY AND LIMITATIONS, AND MEDICAL
CONCERNS OR ANY MEDICATION NEEDED WHILE IN A CCC.)

H.  PROGRESS ON FINANCIAL RESPONSIBILITY PLAN: (IDENTIFY FINANCIAL OBLIGATIONS,
 THE DISTRICT, THE AMOUNT, PAYMENT PLANS, AND PAYMENTS MADE (INCLUDE COIF).)

| FRP ASSIGNMENT | | START DATE |
|---|---|---|
| COMPLT | FINANC RESP-COMPLETED | 03-15-2006 |

I.  RELEASE PREPARATION PROGRAM & RELEASE PLANS: (IDENTIFY THE RELEASE NEEDS OF
THE INMATE AND INVOLVEMENT IN THE RELEASE PREPARATION PROGRAM.  THIS INCLUDES,
BUT IS NOT LIMITED TO, TRAINING RECEIVED.  INCLUDE A THOROUGH REVIEW OF THE
INMATE'S COMMUNITY RESOURCES, RELEASE PLANS,  AND INFORMATION REGARDING
POSSIBLE CCC TRANSFER.)

| CMA ASSIGNMENT (REL PREP) | | START DATE |
|---|---|---|
| RPP NEEDS | RELEASE PREP PGM NEEDS | 10-24-2002 |

    PRE-RELEASE PREP DATE: _____

    RESIDENCE: (INDICATE WITH WHOM AND ADDRESS)

    EMPLOYMENT: (PROVIDE FIELD AND EMPLOYER IF KNOWN)

    USPO: (PROVIDE CHIEF'S NAME AND ADDRESS IN THE SENTENCING DISTRICT.
ADDITIONALLY, IF RELOCATION OF SUPERVISION IS REQUESTED PROVIDE CHIEF'S NAME
AND ADDRESS IN THE RELEASE DISTRICT.)

J.  RELEASE NOTIFICATIONS:

    OFFENDER IS SUBJECT TO RELEASE NOTIFICATION PROVISIONS UNDER 18 USC 4042(B)
    DUE TO:
         CURRENT CONVICTION FOR A DRUG TRAFFICKING OFFENSE

         18 USC 4042(B) NOTIFICATIONS APPLY TO INMATES RELEASING TO THE
         COMMUNITY WITH SUPERVISION

    IS OFFENDER SUBJECT TO RELEASE NOTIFICATION PROVISIONS UNDER 18 USC 4042(C)
    DUE TO A CONVICTION FOR CERTAIN SEXUAL OFFENSES.

         ( ) YES  ( ) NO

         18 USC 4042(C) NOTIFICATIONS APPLY TO INMATES RELEASING TO THE
         COMMUNITY

NAME:  SANCHEZ, JUAN A                    REGNO: 10616-067

DNA TEST STATUS: NEED

    DNA TESTING APPLIES TO INMATES WITH A QUALIFYING OFFENSE


DICTATED BY: _____  CASE MANAGER (DATE)  2/20/07
          5751 L-Z   M. DAVIS, CSW, X-393

DATE TYPED:  2/20/07

REVIEWED BY: _____  UNIT MANAGER (DATE)  2/20/07
          UNIT 3   M. CARROLL,UM X-390

CALIFORNIA CITY CORRECTIONAL CENTER

PROGRESS REPORT

# Exhibit (8)

# PROGRESS REPORT

**U.S. DEPARTMENT OF JUSTICE**                    **FEDERAL BUREAU OF PRISONS**

| California City Correctional Center<br>P.O. Box 2590, California City, CA 93504 | Date:<br>September 14, 2008 |
|---|---|

### Inmate Reviewed

| Inmate's Signature: | Date:<br>9/14/08 | Staff Signature: |
|---|---|---|
| *X Juan Alex Sanchez* | | *M. Mecalyia* |

**1. Type of Progress Report:**

☐ Initial        ☐ Statutory        ☐ Pre-Release

☐ Transfer       ☐ Triennial        ☐ Other (Specify) _____

| 2.    Inmate's Name:<br><br>Sanchez, Juan A | 3.    Register Number:<br><br>10616-067 | 4.    Age (DOB):<br><br>40 (03-07-1968) |
|---|---|---|

**5.    Present Security/custody level:** Low/In

**6.    Offense/Violator Offense:** Conspiracy to cause interstate and foreign travel in aid of drug distribution; Causing interstate and foreign travel in aid of drug distribution; Producing a false identification

**7.    Sentence:** 168 Months and 3 Years Supervised Release

| 8.    Sentence Began:<br><br>07-23-2002 | 9.    Months Served +<br>      Jail Credit:<br><br>73 Months + 874 Days JCT | 10.    Days GCT or EGT/SGT<br><br><br>432 of 658 Days GCT |
|---|---|---|
| 11.    Days FSGT/WSGT/DGCT:<br><br>0/0/0 Days | 12.    Projected Release:<br><br>05-12-2012 GCT Release | 13.    Last USPC Action:<br><br>N/A |

**14.    Detainers/Pending Charges:**

ICE

**15.    Co-defendants:**

None

**Distribution:**
Copy – Inmate Central File
Copy – U.S. Probation Office
Copy – Parole Commission or Regional Office (if applicable)
Copy – Inmate

U.S. Department of Justice

**Sanchez, Juan A**                           **10616-067**                    **September 14, 2008**

---

16.  **Institutional Adjustment:** Mr. Sanchez, Juan A #10616-067 has demonstrated an average institutional adjustment during his incarceration at California City Correctional Center.

  **A. Program Plan:** Mr. Sanchez was designated to California City Correctional Center on May 24, 2007. He was initially classified by his Unit Team on June 12, 2007. At that time his Unit Team recommended he obtain a job assignment, enroll in ESL-Pre GED and start to save money to have in the future to assist with release needs. Further Unit Teams, at California City Correctional Center, recommended he maintain steady employment and clear conduct. He has not enrolled in ESL-Pre GED but he has maintained steady employment and clear conduct.

  **B. Work Assignment:** Sanchez' work history consists of the following work detail assignments.

  California City, CAL.:
  | | | | |
  |---|---|---|---|
  | Facility A&O | 05-24-2007 | to | 07-25-2007 |
  | Recreation Orderly | 07-25-2007 | to | 08-02-2007 |
  | Library Aide | 08-02-2007 | to | Current |

  While at California City Correctional Center his work performance rating was at grade 1 / $0.40 an hour. He has been receiving satisfactory/good work evaluations.

  **C. Educational/Vocational Participation:** The Presentence Investigation Report indicates that Sanchez has never attended school in the United States. The last school that he attended was in the Dominican Republic. He has not completed any educational courses during his incarceration at California City Correctional Center.

  **D. Counseling Programs:** Mr. Sanchez has not completed any counseling programs while incarcerated at California City Correctional Center.

  **E. Incident Report(s):** Mr. Sanchez has not received any incident reports and has maintained clear conduct during his incarceration here at California City Correctional Center.

  **F. Institutional Movement:** Mr. Sanchez was designated to California City Correctional Center on May 24, 2007. Sanchez was initially designated to Otisville, FCI in New York, he was transferred to Fort Dix, FCI in New Jersey on February 5, 2004. He was then re-designated to California City Correctional Center.

  **G. Physical and Mental Health:** There are no indications that Mr. Sanchez is suffering from mental illnesses. He has no medical restrictions and is cleared for regular duty and food service work..

  **H. Progress on Financial Responsibility Plan:** At the time of sentencing, the Middle District Court of Pennsylvania imposed a $300.00 Felony Assessment. Mr. Sanchez has completed that obligation as of March 15, 2006.

17.  **Release Planning:** Mr. Sanchez has a detainer with Immigration and Customs Enforcement and after fulfilling his federal obligation, will be deported to his country of Dominican Republic..

  **A. Residence:** Dominican Republic (specific address not known)

  **B. Employment:** Employment not secured.

  **C. CUSPO (Sentencing District):**      Middle District of Pennsylvania

U.S. Department of Justice

| Sanchez, Juan A | 10616-067 | September 14, 2008 |
|---|---|---|

**D. Release Preparation Program:** Mr. Sanchez has been ordered by the ICE to be deported to Dominican Republic.

18.    **Dictated By:** M. Micalizzi, Case Manager/ N-Unit

19.    **Date Typed:** September 14, 2008

20.    **Reviewed By:**  P. Grajales, Unit Manager/ N-Unit